# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JULY TERM, 1863.

## COHEN *v.* WRIGHT.

22 293
133 201

THE Act of April 25th, 1863, requiring attorneys at law and litigants to file affidavits of allegiance to the Government of the United States as therein prescribed, is constitutional.

Sec. 3 of Article 11 of the Constitution, containing the form of oath to be administered to State officers, does not prohibit the Legislature from prescribing an oath to such officers in a different form of words from that therein used, if the meaning, object, and intent of the section be not violated.

An attorney at law is not a person holding an "office of public trust," within the meaning of those terms as used in the prohibitory clause of Sec. 3, Art. 11, of the Constitution.

The right to practice law is not a natural or constitutional right, but a statutory privilege, subject to the control of the Legislature. The exclusion of an attorney by a test oath is not in the nature of a punishment for a criminal offense, but a denial of a privilege forfeited by failure to comply with a prerequisite condition.

Courts without any special statutory provision may strike from the rolls an attorney guilty of disloyalty or treasonable acts, under their general power of supervision over the morality of their own officers. They may also require an attorney to whom such offense is imputed, to purge himself therefrom by his own oath.

The right to practice law is not "property," nor in any sense a "contract," within the constitutional meaning of those terms.

Cohen v. Wright.

Courts cannot declare a law void, upon the ground that it is contrary to "the spirit and policy of the Constitution," unless it is at variance with some express or clearly implied provision of that instrument.

The payment by a lawyer, of a United States license tax, imposed by the Revenue Law of 1862, does not entitle him to practice his profession without taking the oath prescribed by the State law.

There is nothing in the Constitution which prohibits the Legislature from closing the doors of the Courts against traitors and their aiders and abettors, or which requires that this shall not be done until after conviction of the crime in a regular criminal trial; or which prohibits the Legislature from requiring of those litigating in the Courts, that they shall purge themselves by their own oath of the imputed offense before they shall claim their aid.

The citizen cannot demand protection from the Government without he renders to it the equivalent of obedience and support. When he refuses this obedience and support, and aids, assists, countenances, or encourages those who are struggling to overthrow the Government, he forfeits all right to the use of its Courts.

The State may exclude from its Courts those who are guilty of disloyalty to the nation of which the State is a part, as well as those disloyal to the State Government directly.

The Act of April 25th, 1863, requiring from litigants an oath of allegiance, operates not upon the right of action but upon the remedy alone, which is subject to legislative control, and the Act does not so burden the remedy as to render it useless or impracticable.

APPEAL from the Twelfth Judicial District.

The facts are stated in the opinion of the Court.

*Nathaniel Bennett*, for Appellant.

I.   The Legislature has no constitutional right or power to pass an act punishing disloyalty to any Government, but the State Government.   But this act is an effort to enforce loyalty to a sovereignty other than that of the State.   This State has no right to punish crimes of any kind against any other State or Government.   The State cannot punish crimes committed beyond its territorial jurisdiction.   But the oath requires a person to swear that he has not committed the imputed offenses anywhere, either within this State or without.   The Constitution of the United States does not regulate the punishment of crimes against a State.   (*Barker* v. *The People*, 3 Cow. 702, 703.)   Neither does the State Con-

stitution contemplate the punishment of crimes against the United States.

Again: the terms " Government of the United States " in the oath must mean something different from the " Constitution of the United States " and the " Constitution of the State of California," for these two have previously been mentioned in the oath.  Consequently, these terms can mean nothing else than the Government as at present administered, in other words, the present administration.  The oath also speaks of " the lawful Government of the United States.

II.  The act is in violation of the United States Tax Law, approved July 1st, 1863, with amendment of Act of March 4th, 1863, Sec. 64, Sub. 31.  The operation of this Act of Congress is to authorize every person who has paid his license, to practice as a lawyer during the term through which the license extends.  (*In re Kirk*, 1 Parker's C. C. 67 ; *Freeman* v. *Robinson*, 7 Ind. 321 ; *Tupper* v. *Newton*, 26 or 36 Eng. Law & Eq. 336 ; *Selemans* v. *Miller*, 20 or 12 Id. 353.

III.  The act is intended as a punishment of treason.  If so, it punishes in advance of conviction or trial, and inflicts a punishment for an imputed offense which is not treason.  The definition of treason is given in the Constitution.  (Constitution, Art. 1, Sec. 20 ; *United States* v. *Hanway*, 1 Wallace, Jr. 199, 200.)

IV.  The act operates as a denial of justice—a governmental crime, which has been vigilantly guarded against since the *Magna Charta* of King John.  *Nulli negabismus, nulli vendemus justitiam.*

V.  The act mentions two different oaths.  Which one is to be taken by attorneys?  Here is an ambiguity which renders the act nugatory.  For where an act so highly penal, can be expounded with equal propriety in two different ways, it cannot be enforced at all.

VI.  The act of the Legislature is a violation of Sec. 20 of Art. 1 of the State Constitution, which declares that " treason against the State shall consist only in levying war against it, adhering to its enemies, or giving them aid and comfort."

VII.  Again : By Sec. 8, Art. 1, " no person shall be compelled in any criminal case, to be a witness against himself," and

Cohen *v.* Wright.

"no person shall be held to answer for a capital or otherwise infamous crime, unless on presentment or indictment by a grand jury." But the act authorizes a proceeding against a person on the ground of disloyalty—in other words, incipient treason—which would not be sanctioned by the Constitution against treason itself. Treason, by the Constitution, consists of an overt act—by this statute, it is made to consist of thought unexpressed. And a person is made, negatively, a witness against himself, without a criminal charge even being preferred against him. He is compelled to exonerate himself from a criminal charge, before it is preferred against him. He must prove himself innocent, before any evidence is produced of his guilt. But the crime impliedly charged, consists only in actually levying war. A conspiracy to subvert the Government is not treason. (*Ex parte Bolman,* 4 Cranch, 75 ; 2 Burr's Trial, 401–439.)

VIII. It violates Sec. 18 of Art. 11, which provides "that laws shall be made to exclude from office," etc., "those who shall hereafter be convicted of bribery, perjury, forgery, or other high crimes." This enumeration excludes all others. This law excludes, in effect, an attorney from his office, by imposing such penalties as to preclude him from receiving the emoluments of his office, unless he shall take an oath not warranted by the Constitution. But, if a law cannot be made, in a given instance, to "exclude from office," it cannot be made to deprive one of office after he has attained it. (See *Barker* v. *The People,* 3 Cow. 686, 703.)

IX. The act violates the Constitution of this State (Art. 11, Sec. 3) by requiring of attorneys a different oath from that specified in the Constitution. Attorneys are officers within the meaning of that clause in the Constitution. (*In re Application of Cooper,* 22 N. Y. 84, 92 ; *Fletcher* v. *Dangerfield,* 20 Cal. 427 ; *In re Daniel Wood,* 1 Hop. 6 ; *In re Attorneys' Oaths,* 20 J. R. 492 ; *Waters* v. *Whittemore,* 22 Barb. 593, 595 ; *Seymour* v. *Ellison,* 2 Cow. 13, 23–29 ; *Ray* v. *Birdseye,* 5 Denio, 627 ; *Hobby* v. *Smith,* 3 Cow. 588 ; *In re Dorsy,* 7 Port. Ala. 295 ; *Leigh's Case,* 1 Munf. 468 ; See also, 10 Paige, 356 ; 2 Denio, 607 ; Barnardiston's Ch. 478 ; 3 How. Pr. 402 ; 3 Barb. 196 ; And see further, 5 J. R. 369 ; 9 Id. 253 ; 3 Caines, 221 ; 4 Greenl. 532 ; 2 Cow. 589.)

Cohen *v.* Wright.

This clause of our Constitution was adopted from the New York Constitution of 1822, under which the above decisions were made. And where a constitutional provision of one State is adopted by another, the construction given by the Courts of the former State, is presumed to have been adopted by the latter State. (*Attorney General* v. *Brunst*, 3 Wis. 787.)   Our statutes are full as to the admission, etc., of attorneys. (See Wood's Digest, 65–67.)

X.   The act violates Sec. 6 of Art. 1 of the Constitution, which declares that " cruel or unusual punishments shall not be inflicted," nor " excessive fines imposed."   It is a cruel, or, if not, at least, an unusual punishment, to deprive a person of all his rights of property, and especially before he has been convicted of any offense. All punishments must be proportioned to the nature of the offense, and when they are not, they become cruel, or unusual.   The fine of $1,000 imposed on attorneys for neglecting to take the oath is " excessive," within the meaning of the Constitution.   The Statute of New York of 1813, in relation to dueling, prescribing an oath remotely analogous to the present oath, was deemed by the profession to be unconstitutional under the Constitution of 1777, in which Constitution was not contained the clause respecting oaths embodied in the Constitution of 1822, and which clause has been transferred to our own Constitution.   (See B. F. Butler's argument in *Barker* v. *The People*, 3 Cow. 687, 688.)

XI.   The act violates Sec. 1 of Art. 1 of the Constitution, which declares that " all men " * * * " have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property, and pursuing and obtaining happiness."

This act deprives a man of the right of protecting his property. The guaranty of the Constitution, as to property, is the same as to life, or liberty.   If a person can, by such an act, be prevented from protecting his rights of property, he may equally well be prevented from defending his life or liberty ; as, indeed, he is by this act—for if his person be assaulted he cannot maintain an action.   If his character be slandered, he is remediless.   If his domestic relations be interfered with, he is without redress.

XII.   It violates Sec. 3 of Art. 1, which declares that " the right of trial by jury shall be secured to all, and remain inviolate forever."

20

The act has the effect of taking away a person's rights and property without a trial by jury.

XIII.   It violates Sec. 16 of Art. 1, which declares that "no law shall be passed impairing the obligation of contracts."

This law has the effect of impairing the obligation of contracts between attorneys and their clients.   And as to parties to suits—taking away the remedy, or so far changing it as to affect the substance of the contract which may be in suit, necessarily impairs it. (See *People* v. *Hays*, 4 Cal. 127 ; *Seale* v. *Mitchell*, 5 Id. 402 ; *Bronson* v. *Kinzie*, 1 How. U. S. 311 ; *McCracken* v. *Hayward*, 2 Id. 608 ; *Quackenbush* v. *Danks*, 1 Denio, 128 ; *Same*, 3 Id. 594.)

XIV.   It violates the latter clause of Sec. 8 of Art. 1, which declares that "no person shall be compelled to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."   (*Greene* v. *James*, 2 Curtis' C. C. 187–189 ; *Wymhamer* v. *The People*, 3 Kernan, 378 ; *Ervine's Appeal*, 16 Penn., 4 Harris, 256 ; *Butler* v. *Palmer*, 1 Hill, 324 ; *Morris* v. *The People*, 24 Barb. 232 ; *Taylor* v. *Porter*, 4 Hill, 140.)

It violates the clause in the same section which guarantees that a "party accused shall be allowed to appear and defend in person and by counsel."

Under this law every person in the State may be accused, and he is required to clear himself by his own oath, instead of being allowed to appear and defend against the accusation "in person and by counsel."

XV.   The act violates the spirit of the Constitution ; in other words, the fundamental principles of a free government.   (See *Barker* v. *The People*, 3 Cow. 689—Butler's argument ; *Calder et al.* v. *Bull*, 3 Dall, 386 ; *Fletcher* v. *Peck*, 6 Cranch. 87, 135 ; *Green* v. *Biddle*, 8 Wheat. 1, 88.)   The act has the effect of taking the property of one person and giving it to another.   The Legislature has no power to do this.   (*Taylor* v. *Porter*, 4 Hill, 140.)

XVI.   An act of the Legislature, in theory, is to endure forever, unless it be limited to a shorter period by its own terms.   True, it may be repealed, but this does not enter into the contemplation of

the act itself.    It must be tested by the same rule as if it were to be permanent.

The act under consideration cannot stand this test, and be held constitutional.    Suppose the present war closed, and some of those persons now in arms against the United States should settle in California.    Test this act by a suit in which such a person might become engaged.    The result is palpable.

XVII.    The admission of an attorney is a judicial act, as much so as any other judgment of a Court.    (*In re Cooper*, 22 N. Y. 67, 81, 82, 84–86.)

The admission of an attorney being a judicial act, his deprivation of the office can only be by a judicial act.

XVIII.    The act should have only a prospective effect—that is, it should be construed so as to operate only upon attorneys, etc., admitted since the passage of the act.    Courts always construe such laws so that they shall not operate retrospectively.    (*Plumb* v. *Sawyer*, 21 Conn. 351 or 381 ; *Kennett's Petition*, 4 Foster's N. H. 139 ; *Thorn* v. ———, 4 Cal. — ; *Scott* v. *McGlynn*, 21 Id. 576, 277 ; *Danks* v. *Quackenbush*, 1 Denio, 128 ; *Same*, 3 Id. 594 ; *The People* v. *Mayor, etc.*, 6 Barb. 209 ; 1 Comstock, 129 ; *Sackett* v. *Andross*, 5 Hill, 334–337, and 362–365.)

XIX.    Suppose two or more persons, plaintiffs or defendants to a suit, and notice served on one, who refuses to take the oath, what is to become of the suit as to the other co-plaintiffs or co-defendants ? The act says the suit shall be " absolutely dismissed, and no other suit shall ever be maintained," etc.

Again, suppose a party is a non-resident of the State.    He may not have heard of the act until months after the time of its taking effect, but he is required to swear as to the matters prescribed by the oath, from the twenty-fifth day of April, 1863.    He may have been compelled, in the State of his residence, to take an oath directly the reverse of this.

Again, suppose the party to be a foreigner, a subject and resident, for instance, of England.    Compelling him to take the oath, infringes the treaties between Great Britain and the United States, which respectively guarantee to the citizens of each government the right to appeal to the courts of justice for the enforcement and protection of their rights.

XX. Every person has a constitutional right of eligibility to office, unless he has been convicted of some crime. (*Barker* v. *The People*, 3 Cow. 706, 707, 703 ; *In re Dorsey*, 7 Porter, Ala. 293.) The Legislature might, with the same legal propriety, debar a man of the right to prosecute or defend a suit unless he would make oath that he had not, since the twenty-fifth day of April, " aided, assisted, countenanced, or encouraged," the commission of murder or any other crime, and that he would not do so hereafter. The principle is the same in both cases. Or, the Legislature might require an oath, that he had not used profane language ; or, that he had attended and would attend church every Sunday ; or, that he would not aid, etc., the Odd Fellows or Masonic societies ; or, that he would not break the Sabbath ; or, that he had not since the twenty-fifth of April, aided, etc., and would not henceforth aid, etc., dueling ; or, this oath might as well be required as a qualification for voting; or, it might as well have been required of the Judges of the old Superior Court of San Francisco. This Court depended for existence on the statute. It was not a constitutional Court. The Legislature might as well have required such an oath of those Judges before a suit could proceed in their Court; or, the Legislature might say that the purchaser of goods from a merchant or mechanic, on credit, might serve the notice mentioned in the statute, and unless the merchant or mechanic, within ten days after such service, should take the oath, he should forever be debarred from bringing suit to recover the demand. Or, this oath might be required of all clergymen, before preaching their next sermon, under the penalties of the act ; and of physicians, before drawing their next prescription ; and of dentists, before extracting their next tooth ; and of gamesters, before playing their next ante; and so on, through all departments of business, and all ramifications of society. Or, the Legislature might say that a man shall not have the right of defending his own life, his person, his family, or his property, when lawlessly assailed, unless he had taken this oath.

The act imposes a penalty beyond the reach of executive clemency. (See *In re Dorsey*, 7 Port. 295.)

*E. W. F. Sloan*, also, for Appellant.

Cohen *v.* Wright.

The object of every Act of the Legislature is required to be expressed in the title.    This bears the imposing title of—" An Act to exclude Traitors and Alien Enemies from the Courts of Justice in Civil Cases."

The object, then, of this act, is to deny all redress for civil injuries, to traitors and alien enemies; and to prohibit traitors from practicing law in the Courts of Justice in this State.    It undertakes to make the failure to take the prescribed oath an act of treason against the United States.

Whence did the Legislature of California derive the power to enact a law of that character?    The Congress of the United States can provide for the punishment of treason, but cannot make that an act of treason, which is not made so by the Constitution.    The Federal Constitution declares that: " Treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort."    (Art. 3, Sec. 3.)    It further provides that: " No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open Court."

The power of Congress extends only to declaring the punishment; and even in that respect, it is expressly limited.    " No attainder of treason shall work corruption of blood, or forfeiture, except during the life of the person attainted."

The Legislature of California has not, even, the power to declare what shall be treason against the State.    The Constitution of the State provides that: " Treason against the State shall consist only in levying war against it, adhering to its enemies, or giving them aid and comfort."

It is perfectly evident, therefore, that the Legislature cannot prescribe a test oath, and make the failure to take it an act of treason, either against the State of California, or the United States; and that, in attempting to do so, it has clearly transcended its powers.

The Statute of 1851 provides that each attorney and counselor in this State, before his admission to the bar, shall take an oath to support the Constitution of the United States and of the State of California, and to discharge the duties of attorney and counselor to the best of his knowledge and ability.    It is the oath prescribed by

Sec. 3, Art. 11, of the State Constitution. All officers, legislative, executive, and judicial, are required to take the same form of oath, before entering on the duties of their respective offices. And the Constitution declares that: " No other oath, declaration, or test, shall be required as a qualification for any office or public trust."

The Constitution seems to have exhausted the subject of test oaths. As to all superior officers, the form and extent of the oath are fixed by it. The power of the Legislature over the subject is limited to that of exempting inferior officers altogether. Attorneys and counselors are officers of the Courts, and as such were required by the Statute of 1851, to take the oath prescribed by the Constitution for other officers. As inferior officers, they might have been exempted by the Legislature, but no other form of oath could be imposed except that prescribed by the Constitution. It would have been strange and inconsistent, indeed, if the Constitution had authorized the Legislature to impose upon attorneys and counselors more comprehensive oaths than it had prescribed for those who were elected to fill offices of the highest dignity and trust in the State.

But apart from all this, what was supposed to be the defect in the then existing laws which the Legislature intended to cure by the act in question ?

Was the obligation to support the Constitution of the United States and of the State of California, by which all attorneys and counselors were solemnly bound, not deemed sufficiently comprehensive to exclude traitors from the practice of the law ?

It is undeniably true, that a person may support the Constitution of the United States, whilst he openly disapproves of every unconstitutional measure of the Federal Government. It is impossible to yield to such a measure without, to the same extent, withdrawing support from the Constitution. We have no such political maxim here as that the Government can do no wrong. The exercise of supreme power is government. But supreme power. may be, and often has been, usurped. The infallibility of the Government is a doctrine not to be found in the Constitution of the United States. When it declared that: " This Constitution and the laws of the United States, which shall be made in pursuance thereof, etc., shall

Cohen *v.* Wright.

be the supreme law of the land," it recognizes the liability of the Government to overstep the constitutional limits of its authority. If Congress should pass an act, with the sanction of the Federal executive, " respecting an establishment of religion, or prohibiting the free use thereof, or abridging the liberty of speech, or of the press," no one would pretend to say that it was a law made in pursuance of the Constitution. It would be no part of the supreme law of the land, and the Judges in every State would not be bound thereby. It would be the duty of the Judges to declare it void. The Government might, nevertheless, seek to enforce it by the employment of military power, and if successful, however unconstitutional the measure might be, it would still be the act of the Government. No one can deny this; and yet, all who oppose, or resist, would, in the opinion of the Legislature, be guilty of disloyalty.

The Legislature, evidently, did not regard the obligation to support the Constitution of the United States, and of the State of California, as comprehending that of bearing " true faith and allegiance to the Government of the United States." If the latter obligation is not comprehended by the former, it is, necessarily, repugnant to it.

How can any one conscientiously swear that he will bear true faith and allegiance to the Government of the United States, whatever policy it may pursue, or whatever measure it may adopt, whilst he also swears that he will support the Constitution which limits the powers of that Government? It is no answer to say that the Government may always act under authority of, and in harmony with, the Constitution. The obligation to bear true faith and allegiance to the Government is not made, by the language of the act in question, to depend upon that condition. I cannot perceive how any one can take the prescribed oath without committing perjury in the very act of taking it.

The plaintiff is allowed, if a resident of the county, ten days within which to subscribe and file the oath ; if a resident of the State, without the county, forty days ; if a non-resident, he is allowed such time as the Court or a Judge thereof may determine. Upon the failure of the plaintiff to take the prescribed oath within

the allotted time, the case is to be dismissed, and no other suit can ever be maintained by said plaintiff, his grantees, or assigns, for the same cause of action. No exception is made in favor of the lunatic who appears by his committee, or the infant who sues by his *prochein ami,* or guardian *ad litem.*

The effect of the notice is a stay of all proceedings in the prosecution of the cause; the consequence of the plaintiff's failure to comply, is a perpetual bar to the recovery of the demand.

The defendant is not required to allege facts against the plaintiff upon which the latter might take issue; he is subjected to no responsibility—not even to that of a common informer; the vague charge of disloyalty is but inferentially made in the form of a notice. But the moment the notice is given, the protecting power of the law, so far as the rights of the plaintiff are concerned, is instantly suspended, until he takes an expurgatory oath. If he declines, he becomes an outlaw.

No matter how blameless his life may have been; no matter how patriotic, how honest, how pure and conscientious, he must take the oath, or be placed beyond the protection of the municipal law, and branded as a traitor.

Treason against the State is defined by the Constitution of the State; nothing can be added by the Legislature. There is such a crime as treason against the State; but the Legislature may not have been aware of it. And no person can be held to answer for such crime, unless on presentment or indictment of a grand jury; and, in any trial, the party accused shall be allowed to appear and defend in person and with counsel; and, touching the truth of the charge, a jury trial is secured to him. Nor can the party accused be convicted of treason, unless on the evidence of two witnesses to the same overt act, or confession in open Court. These are the inalienable rights of every citizen of the State which the Legislature cannot take away.

Treason against the United States is defined by the Constitution of the United States, and nothing can be added, even by Congress. The Legislature of California can have no power to impose upon the citizens of this, or any other State, a new political status in reference to the United States. That is unalterably established by

the Federal Constitution, and cannot be changed, except by an alteration of the instrument itself.

That Constitution contains the full measure of all my political obligations, in respect to the Federal Government. If the Legislature of this State can enlarge these, they can also diminish them. I deny its power to do either.

" The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." The State Legislature cannot, therefore, surrender into the hands of the Federal Government any of the powers so reserved, under any pretext whatever. It has no right to abnegate the constitutional power and dignity of the State.

The principles and tendency of the act in question are vicious. Such legislation strikes at the very foundation of civil liberty. Its bitter fruits will, sooner or later, appear. If indulged in, " it must destroy the balance of the Government, and, in the end, the Government itself."

*Pixley,* Attorney General, for Respondent.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring specially.

This is an action to recover the sum of three hundred and fifty dollars, an indebtedness alleged to be due from the defendant to the plaintiff. It was commenced on the nineteenth day of June, 1863, by H. E. Highton, as attorney for the plaintiff. On the same day an appearance was entered by the defendant, and notice given that he objected to the further prosecution of the suit, for the reason that the plaintiff was disloyal to the Government of the United States. On the same day a stipulation was filed, in which the plaintiff waived the ten days' time allowed by law to file his affidavit of allegiance, declined to file it, and it was agreed that a motion for dismissal of the suit might be submitted to the Judge of the Court below for failure to file such affidavit, with the same effect as if the ten days had expired. The Court granted the motion to dismiss, and judgment was accordingly entered that the action be dismissed; that no other suit be maintained by the plaintiff for the same cause

of action, and that the defendant recover his costs. From this judgment the plaintiff appeals to this Court.

When the case was submitted in this Court, Highton appeared, as the attorney of the appellant, to argue the case on his behalf, and it was objected that he had not made and filed the affidavit of allegiance required by Sec. 3 of the Act entitled "An Act to exclude Traitors and Alien Enemies from the Courts of Justice in Civil Cases," approved April 25th, 1863. It was admitted that he had paid to the United States Tax Collector the tax of ten dollars imposed upon lawyers by the United States Revenue Law of 1862, but had not filed the affidavit of allegiance required by the third section of the above law of this State.

These facts present two important questions for adjudication: 1st. Is the Act of April 25th, 1863, so far as it requires attorneys at law to file an affidavit of allegiance, constitutional and valid? 2d. Does the same act, in requiring parties litigating civil cases in the Courts of Justice to file such affidavit, violate the Constitution?

Sec. 1 of the law in question provides that the defendant in any civil suit pending in any Court of Record in this State, may object to the further prosecution of the suit on the ground of the disloyalty of the plaintiff, and that all proceedings therein shall be stayed until the plaintiff shall file in the case an affidavit in the following form, to wit: " I, [here insert the name of the plaintiff] do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of California; that I will bear true faith and allegiance to the Government of the United States, any ordinance, resolution, or law of any State or Territory, or of any Convention or Legislature thereof, to the contrary notwithstanding; that I have not, since the [here insert the date of the passage of this act] knowingly aided, encouraged, countenanced, or assisted, nor will I hereafter, in any manner aid, encourage, countenance, or assist the so-called Confederate States, or any of them, in their rebellion against the lawful Government of the United States; and this I do without any qualification or mental reservation whatsoever. So help me God."

The same section also provides the form of oath to be taken by

a plaintiff who is a foreigner and has not been admitted to citizenship; and also that if the plaintiff shall fail to file this affidavit within certain periods of time fixed by the act, or to be fixed by the Court, in case the plaintiff is a non-resident of the State, the "case shall thereupon be absolutely dismissed, and no other suit shall ever be maintained by the said plaintiff, his grantees or assigns, for the same cause of action."

Sec. 2 provides for the filing of the same affidavit by a defendant who sets up a counter claim or new matter in his answer, with the same effect if he shall fail to comply with the law.

Sec. 3 reads as follows: " No attorney at law shall be permitted to practice in any Court in this State until he shall have taken and filed in the office of the County Clerk of the county in which the attorney shall reside, the oath prescribed in this act; and for every violation of the provisions of this section, the attorney so offending shall be considered guilty of a misdemeanor, and on conviction shall be fined in the sum of one thousand dollars." Such are substantially the provisions of the act we are called upon to consider.

1. The first question we will examine is that relating to attorneys at law. It is insisted that the statute violates Sec. 3 of Art. 11 of the Constitution of this State, which reads as follows: " Members of the Legislature, and all officers, executive and judicial, except such inferior officers as may be by law exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation: ' I do solemnly swear [or affirm, as the case may be], that I will support the Constitution of the United States and the Constitution of the State of California, and that I will faithfully discharge the duties of the office of —— according to the best of my ability.' And no other oath, declaration, or test shall be required as a qualification for any office or public trust." It is insisted that an attorney at law is an " officer;" that the privilege he exercises is an " office " within the intent and meaning of this section, and that the affidavit required by the statute in question is another and a different oath, in the nature of a test oath, imposed as a qualification for the office, and that the law therefore conflicts with the Constitution.

Before proceeding to investigate these points, it may be well to refer to some rules adopted for the construction of constitutional provisions, as a guide to the examination. Thus it is held, "that the Constitution of this State is not to be considered as a grant of power, but rather as a restriction upon the powers of the Legislature ; and that it is competent for the Legislature to exercise all powers not forbidden by the Constitution of the State, or delegated to the General Government, or prohibited by the Constitution of the United States." (*People* v. *Coleman*, 4 Cal. 46 ; *Vermule* v. *Bigler*, 5 Id. 23 ; *Hobart* v. *Supervisors of Butte County*, 17 Id. 23 ; *People* v. *The Judge of the Twelfth District*, Id. 547.) Such restriction must appear, either by express terms or by necessary inference. (*State* v. *Rogers*, 13 Cal. 159.) " The delicate office of declaring an Act of the Legislature unconstitutional and void should never be exercised unless there be a clear repugnance between the inferior and the organic law." (*People* v. *Burbank*, 12 Cal. 378.) It is well settled that this power is not to be exercised in doubtful cases, but the will of the Legislature must be respected by the Courts, unless the act declaring it be clearly inconsistent with the fundamental law. (*People* v. *Judge of the Twelfth District*, 17 Cal. 547.) " It has been repeatedly held that to warrant the Courts in setting aside a law as unconstitutional, the case must be so clear that no reasonable doubt can be said to exist." (Sedgwick on Stat. and Const. Law, 592.) " It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered void." (*Fletcher* v. *Peck*, 6 Cranch, 128.)

The first point to determine is, whether this act does impose an oath or test substantially differing from that prescribed by the Constitution. All civilized Governments require their officers to take what, by other nations, is termed the oath of allegiance, by which the party swears to bear true faith and allegiance to the reigning sovereign ; but as our highest public officers, State and National, are not vested with the right of sovereignty, it was necessary to change the *form* of the oath, and thus the officer is required, by both the National and State Constitutions, to swear to support the Constitution—the Constitution being used as the representative of

the sovereign power.   But the true spirit, intent, and meaning of the constitutional oath is to bear true faith and allegiance to the National and State Governments.   It certainly was not the intention that the officer should merely swear to support the parchment on which the Constitution was written, or the paper on which it might be printed, but to support the Government organized by that instrument.   Nor in thus taking the oath to support the Government does the officer swear allegiance to the individuals who administer it.   It is fidelity to the Government that was organized by the Constitution, that has existed ever since, and is intended to exist through all coming time, as administered by the official agents of the people, that is required.   Such being the object of the constitutional oath, does the affidavit required by the act go beyond it, and require other conditions ?   The first clause follows the language of the Constitution, and is not objected to.   The second clause is but an amplification, or a more complete expression of the same terms, more fully defining the meaning of the previous clause, expressing in clear language its legal effect.   The Constitution of the United States, is the supreme law of the land, and all citizens owe allegiance to the Government organized by it, " any ordinance, resolution, or law of any State or Territory, or of any Convention or Legislature thereof, to the contrary notwithstanding."   This is but stating in plain terms, what is fully meant by the words, " support the Constitution of the United States."   This clause therefore imposes no additional obligation.   The next clause, that the party has not, since the passage of the act, and will not aid, encourage, countenance, or assist those now engaged in rebellion against the United States, is a solemn declaration and pledge ; a declaration that the party has not committed, since the passage of the law, and a pledge that he will not commit, any treasonable act against the National Government.   So far as it is a pledge of future good conduct, it is but expressing in another form that he will support the Constitution, and bear true allegiance to the United States, and to that extent clearly is not opposed to this section of our State Constitution.   So far as it is a declaration of past conduct, it seems to go beyond the strict letter of the constitutional oath, and we have therefore had a doubt of its validity.   It does, however, but carry

out the object, design, and spirit of the constitutional oath ; and as it is not an unreasonable requirement, being confined to acts since the passage of the law, and does not clearly violate the Constitution, we are unwilling to declare it void on a mere doubt. Probably the framers of the Constitution never imagined that the elective or appointing power could ever be guilty of placing traitors in office, and therefore did not see the necessity of making the official oath apply in express terms to past as well as future conduct. But although not directly expressed, it is clearly implied in the form of oath adopted. The last clause, that " this I do without any qualification or mental reservation whatsoever, so help me God," is but a full expression of what is clearly implied in all oaths, and cannot be held in any sense to violate the Constitution.

In our judgment it was not intended to limit the action of the Legislature to the particular set form of words used in the Constitution, and it is clearly within their power to prescribe any form, so that they do not go beyond the intent, object, and meaning of the Constitution. The history of the present rebellion has shown the necessity of so framing it that the essential spirit of the constitutional oath shall not be perverted, by sophistry and casuistry, from its true intent and meaning, and that the officer taking it may not do so with the secret or avowed intention of aiding in subverting the Government which he has really sworn to support, without palpably violating the oath in letter as well as in spirit.

A clause similar to the one under consideration is found in the Constitution of the United States, and reads as follows : " The Senators and Representatives before mentioned and the members of the several State Legislatures, and all executive and judicial officers, both of the United States and of the several States, shall be bound by oath or affirmation to support this Constitution ; but no religious test shall ever be required as a qualification to any office or public trust under the United States." Congress, in pursuance of this provision, on the second day of July, 1862, passed a law requiring every person elected or appointed to any office under the National Government, either civil, military, or naval, to take an oath that he had never voluntarily borne arms against the United States, or given any aid or encouragement

to persons engaged in armed hostility thereto; that he had not attempted to exercise any office, under any pretended authority in hostility to the United States, or yielded any voluntary support thereto; that he will support and defend the Constitution of the United States against all enemies, foreign and domestic; that he will bear true faith and allegiance to the same; and that he takes the obligation freely, without any mental reservation or purpose of evasion; and declaring that any person who should falsely take such oath should be guilty of perjury, and on conviction should be deprived of his office and rendered incapable forever after of holding any office or place under the United States. This law was passed after a full and thorough discussion of the whole subject, and the instances in which Acts of Congress have been declared unconstitutional are very rare. The oath prescribed by the Act of Congress is far more stringent than the one under consideration, especially relative to the past conduct of the officer. The very first act passed by Congress was one regulating the form, time, and manner of administering the oath prescribed by the National Constitution, and it was made applicable to all legislative, executive, and judicial officers of the several States. And among the first laws passed by the Legislature of this State was one prescribing the form and manner of taking the oath of office. (Statutes of 1850, 207.) The power of Congress and of the State Legislatures to pass laws prescribing in detail everything requisite to properly carry out these constitutional provisions has never been doubted.

But is an attorney at law an " officer," and does he fill an " office " within the meaning of the Constitution? It is contended that as this clause was taken verbatim from the Constitution of the State of New York we are conclusively bound by the decisions of the Courts of that State in construing it; that in adopting it the judicial construction was adopted with it, and the case of *The Attorney-General* v. *Brunst* (3 Wis. 787) is referred to in support of this doctrine. This Court, we think, has announced the correct rule in such cases in *The People* v. *Burbank* (12 Cal. 387), where it says: " We might agree with the learned counsel that the Constitution must generally be construed more by its own terms than by the aid of authorities from other States; but this is

only true where there is something peculiar in the matter to be construed. If the same words, *in the same or similar contexts,* have elsewhere received a definite construction, the authority is entitled to the same weight in this as in other cases." A well-settled construction of such a clause by the Courts of another State is certainly entitled to great weight, but not to a conclusive effect, such as would require us to blindly follow it.

No two Constitutions are precisely alike in all their provisions; rarely even in the wording of similar provisions ; and in construing a Constitution, like any other instrument, it is subject to the general rule, that it is to be construed so as to reconcile and give meaning and effect to all its parts. (*The People* v. *Gerke,* 5 Cal. 381.) It is the duty of the Court to adopt such a construction as will carry out the plain intendments of the Constitution, in all its parts. (*The People* v. *Reid,* 6 Cal. 288.) The same clause in different Constitutions might, therefore, require different constructions to reconcile it with other and varying clauses.

Still, it is proper to examine the decisions of the Courts of New York made prior to the adoption of our State Constitution, to ascertain whether this clause had obtained a settled construction which could be considered as having been adopted with it. The first decision was made by the Supreme Court of that State in *The Attorneys' Oath Case* (20 Johns. 492.) The point was, whether an attorney or counselor holds an *office* or *public trust* in the sense of the Constitution, and therefore could not be required to take the anti-dueling oath. The Court says : " In my judgment, an attorney or counselor does not hold an *office,* but exercises a *privilege* or *franchise.* They enjoy the exclusive privilege of prosecuting and defending suits for clients who may choose to employ them. Various classes of persons are licensed in the City of New York, with an exclusive privilege in their employment; yet they are not public officers. Physicians are also licensed, pursuant to statutes, yet they hold no *office* or *public trust,* in legal construction. The fees of attorneys are fixed by law ; and so is the compensation of *cartmen,* and *bakers,* and *ferrymen.*" The opinion was delivered by Justice Platt, and concurred in by Justice Woodworth, Chief Justice Spencer dissenting, but delivering no opinion.

The next case was in the Court of Chancery (*Wood's Case*, 1 Hopkins' Chan. 6), in which Chancellor Sandford held that the station of a solicitor in chancery was an office within the meaning of the new Constitution, and therefore could not be compelled to take any other oath than that prescribed therein. The Chancellor says: " So far as the legal profession is an occupation open to all, there is no reason to consider a lawyer as a public officer. The exercise of this profession is in fact an occupation, in which every person is free to engage ; but it is not so in respect to proceedings in the Courts of Justice." The reasoning of the Court is based mainly upon the ground that he is an officer of the Court, and therefore within this constitutional provision. That certainly cannot be called an office, in legal acceptation, " in which every person is free to engage."

The next case was in the Court of Errors. (*Seymour* v. *Ellison*, 2 Cowen, 13.) The counsel for one of the parties had recently died, and Judge Betts, who had formerly been counsel, appeared to argue the case. Justice Woodworth said that, " admitting there is no constitutional provision on the subject, I should hold it unfit for a Circuit Judge to act as counsel," and in this Sutherland, J. and Sudam, Senator, concurred. On the other hand, Chief Justice Savage said: " I think the constitutional ground the true one, and would refer the decision to this instead of general unfitness." The section of the Constitution alluded to provides that " neither the Chancellor nor Justices of the Supreme Court, nor any Circuit Judge, shall hold any other *office* or *public trust*, and he held that by acting as attorney he would be holding another " *office.*" In this view Chancellor Sandford, who decided the case of Wood, concurred. The other members of the Court voted that he could not act as counsel, without giving their reasons. Thus we have Platt, Woodworth, Sutherland, and Sudam holding that a lawyer is not an officer within the Constitution, and Spencer, Savage, and Sandford the contrary. There are other cases in which this question has been indirectly before the Courts of that State, but these are the only ones in which this section of the Constitution was directly passed upon prior to the adoption of our State Constitution. It is clear that it had not then received a fixed, well-defined construc-

tion, and that, under the rule stated by counsel for the appellant, it is still open for judicial construction.

To construe this section to mean that a lawyer is an officer, would directly conflict with the well-established meaning of other provisions, in which the word officer is used. Thus, if it is an office it is one of profit, and an impeached officer would be disqualified from practicing the profession, under Sec. 19 of Art. 4; and Senators and Assemblymen, who should vote to regulate attorneys' fees, would be excluded from practicing law by Sec. 20; and a lawyer, admitted to practice under the laws of the United States, would be a "person holding a lucrative office under the United States," and would not "be eligible to any civil office of profit under this State," and so would be excluded from practicing in our State Courts, or holding any office, by Sec. 21, and could not be Governor under Sec. 12 of Art. 5. If it is an office, it is liable to become "vacant" by death, resignation, removal from the State, or otherwise, and would be governed by Sec. 8 of Art. 5. If it is an office, a lawyer must be a "judicial officer," for his duties relate mainly to Courts of Justice, and he has always been termed an officer of the Court. He would, therefore, be precluded from receiving, "to his own use, *any fees or perquisites of office*," a result which certainly never could have been intended by those who framed or voted for the Constitution. So, too, if he is an officer, he must be elected or appointed, as required by Sec. 6 of Art. 11, and the duration of the office cannot exceed four years, as prescribed by Sec. 7 of Art. 11. We might refer, in this way, to other provisions, but sufficient has been stated to show that the construction contended for is utterly irreconcilable with the plain meaning of the words office and officer, in almost every part of the Constitution, and this establishes that such is not its true intent and meaning in the section under consideration.

This question whether a lawyer is a public officer or not has been adjudicated in several cases. The Constitution of Alabama empowered the General Assembly "to pass such penal laws to suppress the evil practice of dueling, extending to disqualification from office, or the tenure thereof, as they may deem expedient;" and it was held that the term "office" as thus used, did not in-

clude attorneys and counselors at law. (*Dorsey's Case*, 7 Porter, 293.)   An act of Virginia required that " every person who shall be appointed to any office or place, civil or military, under this Commonwealth," should take the anti-dueling oath; and it was held, in *Leigh's Case* (1 Mumford, 468), that a person who applied for admission to practice law was not an officer within the act, and could not, therefore, be required to take the oath.   The Constitution of New York, adopted in 1846, in its provisions relating to the Judges of the Court of Appeals and the Supreme Court, provides that " they shall not exercise any power of appointment to public office."   It was held that the admission of an attorney by the Courts to practice law is not an appointment to office, under this clause of the Constitution, and that the statute vesting the power of admission in the Courts was constitutional.   (*Cooper's Case*, 22 New York, 84–92.)   So, too, it was held in *Byrne* v. *Stewart* (3 Dessausure, 466), that a lawyer was not an officer within the Constitution.

Attorneys are officers of the Court, and as such are subject to the control of the Court before which they practice, which has power to summarily investigate the dealings and transactions between them and their clients in cases before it, as also to disbar them for misconduct and deprive them of the privilege of practicing their profession.   The books are full of decisions in which they are termed officers in this sense.   And in some cases the Courts have said, *arguendo*, that they are " public officers," on the ground that they receive stated fees fixed by statute and are subject to the control of the Court.   (*Walmsby* v. *Booth*, Barnardiston Ch. 478; *Merritt* v. *Lambert*, 10 Paige, 352, affirmed without any opinion, under the style of *Wallis* v. *Loubat*, in 2 Denio, 607; *Waters* v. *Whittemore*, 22 Barb., S. C., 595.)   But none of the cases we have been referred to hold directly, as a point actually decided in the case, that they are " officers," or " public officers," within the legal meaning of those terms when used in statutes and Constitutions, except the case of *Wood*, in 1 Hopkins Ch. 6, which is clearly overruled by the numerous cases to the contrary.   We therefore hold that an attorney at law is not an officer, within the meaning of that term as used in the Constitution.

It is also contended that the act in question, so far as it applies to attorneys, violates numerous other constitutional provisions; that it compels the attorney to answer to a crime, without any presentment or indictment by a grand jury; that he is not allowed to appear and defend in person or by counsel, but is compelled to defend by his own affidavit; that it compels him to be a witness against himself, and that it deprives him of his property—that is, his right to practice his profession—"without due process of law," in violation of Sec. 8 of Art. 1; that it deprives him of his property without a jury trial, which is secured by Sec. 3, Art. 1; that it imposes an "excessive fine," and inflicts a "cruel and unusual punishment," in depriving him of a right to practice; that it deprives him of the freedom of speech and the right to "publish his sentiments on all subjects," secured by Sec. 9 of Art. 1; that if this right is abused, by the utterance or publication of treasonable sentiments, tending to aid, encourage, or countenance those in rebellion against the Government, it can only be punished by a criminal prosecution, and not by deprivation of his privilege to practice his profession; that the law "impairs the obligation of contracts," by preventing him from fulfilling his contracts to serve his clients, and that his privileges are in the nature of a grant of a vested right from the Government, and therefore the statute violates Sec. 16 of Art. 1; that it violates the *spirit* if not the letter of the Constitution, because every person has a constitutional right of eligibility to office unless he has been convicted of some crime; and that it excludes him from his office without any conviction of the crimes mentioned in Sec. 18 of Art. 11, and that the mention of crimes of a certain class in that section implies that the Legislature cannot exclude from office for any other offenses.

Sec. 3 of the law in question provides that the act of practicing as an attorney at law without having filed an affidavit of allegiance, shall be a misdemeanor, punishable by a fine of one thousand dollars, but that punishment can only be inflicted after a trial in due course of law; and as it is not a "capital or infamous crime," the Constitution does not require that the proceedings shall be by indictment. The case before us not being one in which that portion of the act comes in question, it is unnecessary for us to determine whether

Cohen *v*. Wright.

it imposes an excessive fine or a cruel and unusual punishment, or in any other respect violates the Constitution.

The exclusion of the attorney from the practice of his profession by this law, is not because he has committed any crime, nor is it in the nature of a punishment for any criminal offense. The right to practice law is not a constitutional right, for it is not mentioned in that instrument, or recognized, or established by it. It is a mere statutory privilege, not even rising to the dignity of an office, except in a very limited sense, as we have already shown. This privilege is, by the statute granting it, extended to all persons who comply with certain conditions. Before the passage of this act, the conditions were that he should be a white male citizen, twenty-one years of age, of good moral character, possess the necessary qualifications of learning and ability, procure a license from the Court to practice, and take the oath prescribed by the law. This act does but change the character and form of one of the former conditions, and requires the oath to be taken in the amended form, upon the noncompliance with which he is prohibited from practicing. It is not a crime for him to decline to comply with this new condition, by refusing to take the oath. The taking of it is now made a prerequisite to the exercise of the privilege. If the effect of his refusal is to exclude him from the practice, it is a result caused by his own voluntary conduct. In no sense is it a " punishment for crime," for the refusal to take the oath is not made a crime. A person may thus refuse who has never been guilty of any treasonable act, and has no intentions of that kind ; and if he is prevented from practicing, it is by his own voluntary course. If there is any " punishment " in this it is self-imposed. A person who voluntarily locks himself up in a prison, and refuses to turn the key to let himself out, could with as much reason complain that he was deprived of his liberty, " without due process of law," in violation of the Constitution. We do not see how this conclusion is to be avoided, unless it can be shown that traitors in act and intention have a constitutional right to practice law.

The provision that " no person shall be deprived of life, liberty, or property, without due process of law," is one of the most essential protections against the exercise of arbitrary power by the Leg-

islature, and one that should be most carefully guarded by the Courts. The terms "due process of law" have a distinct legal signification, clearly securing to every person, whether a citizen or not, without distinction of sex or race, a judicial trial, according to the established rules of law, before he can be deprived of life, liberty, or property. These essential rights cannot be taken away by any mere declaration of legislative will, for the very object and purpose of this provision was to prohibit the Legislature from passing laws of that character. Any other construction would render this clause utterly nugatory. (*Wynehamer* v. *The People*, 3 Ker. 378; *Ervine's Appeal*, 16 Penn. 263; *Hoke* v. *Henderson*, 4 Dev. 1; *Jones* v. *Perry*, 10 Yerg. 59; *Taylor* v. *Porter*, 4 Hill, 140; *Embury* v. *Conner*, 3 Comstock, 511; *Powers* v. *Bergen*, 2 Selden, 358; *Westwell* v. *Grigg*, 2 Ker. 202; *Butler* v. *Palmer*, 1 Hill, 324; 2 Kent, 13; *Murray's Lessee* v. *Hoboken Land Company*, 18 How. U. S. 272.)

The great principle is, that a man's life, liberty, and property, is his own; that he shall enjoy them as may best please himself, provided he injures no other person, until it is proved in due course of law that he has forfeited his life or liberty, or that the property is not his, but belongs to another. It is a direct prohibition upon the Legislature from passing any law depriving any person or class of persons of life, incarcerating in prison, selling or holding in slavery, or in any other way taking away their liberty, or divesting them of any property, whether real or personal, held, owned, or possessed by them, or the right to acquire and own property, except by a due and regular proceeding according to the course of the common law regulating proceedings of like character, and usually only upon the judgment of a Court of Justice of competent jurisdiction, rendered in proceedings in which such person shall have had his rights fairly adjudicated, in accordance with the established rules of law applicable to such cases, and protected by all the safeguards of the Constitution. If the right of the attorney to practice law is "property," within the clear intent and meaning of the Constitution, then there is much force in the position that the statute, by depriving him of that right without a judicial investigation, such as is usual in cases of that kind, violates this provision. Still it is not so clear as to

be beyond doubt, for it can hardly be said that he is " deprived " of anything when the law leaves it open for him to resume his privileges at any time by taking the oath, a failure to do which is his own fault.

The right to practice law is not an absolute right, derived from the law of nature. It is the mere creature of the statute, and when the license is issued and the official oath taken, which authorizes the attorney to exercise the right, it confers but a statutory privilege, subject to the control of the Legislature. Such is the legal effect of all statutory privileges, unless they are in the nature of contracts or vested rights of property. (*The People* v. *Livingston*, 6 Wend. 531 ; *Oriental Bank* v. *Freeze*, 18 Maine, 109 ; 2 Story on Constitution, Sec. 1, 398; *Calder* v. *Bull*, 3 Dallas, 386, 394.) The question then arises, is this right to practice law in the nature of " property," or is it a " contract " between the Legislature and the attorney, which the former cannot impair within the true intent and meaning of the Constitution. As we have already shown, it does not rise to the dignity of a public office, and even if it did it could not be considered as a " contract " or a " vested right of property " within the Constitution. The Legislature possesses the power to alter or abridge the term of an office of purely legislative character (*People* v. *Haskell*, 5 Cal. 537) ; and even to destroy it entirely during the term of the incumbent (*Attorney-General* v. *Squires*, 14 Cal. 17) ; and can render the enjoyment of the right to an elective office dependent upon various conditions (*Brodie* v. *Campbell*, 17 Cal. 20). And the Legislature may increase or diminish the salary or fees of any officer, unless prohibited by the Constitution, without impairing any vested right. (2 Story on Constitution, Sec. 1, 385, note 4 ; *Commonwealth* v. *Bacon*, 6 S. & R. 322 ; *Conner* v. *City of New York*, 1 Selden, 285 ; *Butler* v. *Pennsylvania*, 10 How., U. S., 402 ; *Warner* v. *The People*, 2 Denio, 272.) Public officers have no proprietary interest in their offices, and their rights and duties may be changed by the Legislature during their continuance in office. (*State* v. *Dews*, R. M. Charlton, 397.) A law creating an office may be repealed before its term has expired, and the office and compensation ended thereby. (*People* v. *The Auditor*, 1 Scammon, 537.)

Cohen *v.* Wright.

The Legislature can limit the tenure and provide for the removal of an officer even when the office is created by the Constitution. (*Field* v. *The People*, 2 Scammon, 79.) Contracts between the State and individuals in public offices are not within the constitutional provision prohibiting the passage of a law impairing the obligation of contracts. (*Myers* v. *English*, 9 Cal. 341.) It is clear that as an officer of Court he has no vested right of property or contract within the meaning of the Constitution, nor has he in any other view that can be taken of his right. A right to an annuity granted by the Legislature may be taken away by a simple repeal of the law. (*Dale* v. *The Governor*, 3 Stewart, 387.) " Property is the right of any person to possess, use, enjoy, and dispose of a thing. The term, although frequently applied to the thing itself, in strictness means only the rights of the owner in relation to it." (*Wynehamer* v. *The People*, 3 Kernan, 433 ; 2 Bouvier's Law Dic., title Property.) An attorney may divest himself of his privileges at any time by applying to the Court to strike his name from the rolls. (*Scott* v. *Van Alstine*, 9 Johns. 216.)

The right is subject to the condition that the attorney shall possess a blameless moral character, and it is forfeited upon a breach of that condition. The public have a right to demand that no person shall be permitted to aid in the administration of justice whose character is tainted with dishonesty, corruption, crime, and, we will add, disloyalty or treasonable acts. And his name will be stricken from the roll by the Court, by a summary proceeding, in such cases, whether provided for by statute or not, as it is a duty which the Court owes to the public. (*Mill's Case*, 1 Manning, 392 ; *Peterson's Case*, 3 Paige, 510; *Austin's Case*, 5 Rawle, 204; *Burr's Case*, 1 Wheeler's Cr. C. 503 ; *Brown's Case*, 1 How., Miss., 303 ; *Rice* v. *Commonwealth*, 18 B. Monroe, 472.) And this is done not as a punishment of the attorney, but as a measure necessary for the protection of the public. (1 Manning, 392; 3 Paige, 510; 5 Rawle, 204.) And the Court has power to require the attorney to purge himself upon oath of the imputed charge. (*Attorney's License*, 1 Zabriskie, N. J., 345.) The name of an attorney who has fought a duel will thus be stricken from the roll, although no statute provided for such a case, and although the attorney had not been convicted of

the offense. (*Smith* v. *Tennessee*, 1 Yerger, 228.) A conviction of the crime charged is not necessary. (1 Zabriskie, N. J., 345.) The Legislature may deny to one man a privilege extended to another without infringing upon the Constitution. (*The People* v. *The Judge of the Twelfth District*, 17 Cal. 547.) The Legislature has power to repress whatever is hurtful to the general good, and to pass laws regulating the relations, contracts, intercourse, and business of the people at large, and of its members to each other, and it is generally the exclusive judge of what is or is not hurtful, the only limitations upon this power being those prescribed by the Constitution. It has the power to regulate as well as to suppress particular branches of business deemed by it immoral and prejudicial to the general good. The duty of Government comprehends the moral as well as the physical welfare of the State. (*Ex parte Andrews*, 18 Cal. 678.) The practice of the law is a privilege to which the Legislature may attach such conditions as it may deem proper, and a breach of the condition is a forfeiture of the right. (Collier, C. J., *Dorsey's Case*, 7 Porter, 395 ; *Dormenon's Case*, 1 Martin, 129 ; *Bank of New York* v. *Stryker*, 1 Wheeler's Crim. Cases, 330 ; *Sayer's Case*, 7 Cow. 367 ; Anon. 4 J. R. 191.)

The right to practice law is valuable to the possessor only. It cannot descend or be inherited, bought or sold, conveyed or transferred, can be divested and destroyed by a mere order of Court, is subject to forfeiture by mere loss of moral character on the part of the possessor, and cannot therefore, in any proper sense, be deemed " property," or amount to a " contract," in the constitutional meaning of those terms.

There is nothing in the act which deprives attorneys of the freedom of speech or publication, or inflicts any punishment for any abuse of those rights, within Sec. 9, Art. 1 of the Constitution. Nor is it opposed to " the spirit and policy of the Constitution," so often urged in the absence of an express prohibitory provision. That instrument, in its letter, as well as its " spirit and policy," is directly opposed to treason and treasonable practices ; nor does it give the least support to the idea that Courts of Justice are to be lurking places or sanctuaries for that class of criminals. But we

do not wish to be understood as sanctioning the position that the Courts can declare a law void, which is not prohibited either by the express provisions of the Constitution, or by reasonable implication therefrom, upon any such vague and uncertain ground. This Court has said, in *People* v. *Weller* (11 Cal. 86), "We do not, however, approve of that principle of constitutional construction which seeks by vague surmises, or even probable conjecture, or general speculation of a policy not distinctly expressed, to control the express language of the instrument; since such a mode would not unfrequently change the instrument from what its framers made it, into what the Judges think it should have been." And these views are sustained by *Patterson* v. *Board of Supervisors of Yuba County* (13 Cal. 182); *Wynehamer* v. *The People* (3 Kernan, 431); *Cochran* v. *Van Surley* (20 Wend. 383).

We have already shown that the occupation of a lawyer is not an "office," and it follows that it does not come within the provisions of Sec. 18 of Art. 11, which require that laws shall be passed excluding from office those convicted of bribery, perjury, forgery, or other high crimes. But we do not wish to be understood as holding that the mention of a particular class of crimes in this section prohibits the Legislature from excluding from office any but those convicted of those particular crimes. That is a question not properly before us, and we do not deem it necessary to determine it.

We have carefully considered the constitutional objections to this law, and we see nothing in the Constitution of this State prohibiting the Legislature from requiring public officers, or those exercising special privileges, like attorneys at law, to take an expurgatory oath of the character of that prescribed by this act, and it is clearly within their general legislative powers, unless so prohibited. It is no answer to say that the power is liable to abuse, for that is an objection which lies to the use of every power.

It is objected that it virtually inflicts a punishment for a crime beyond the pardoning power of the Governor; but, as we have shown, the exclusion from the profession is not in the nature of a punishment. The statute substantially makes the refusal to take the oath operate as a voluntary withdrawal from the profession,

Cohen *v.* Wright.

leaving it open for the attorney to be readmitted at any time by taking the oath, and thus complying with the new condition upon which the right depends. The pardoning power does not extend to the reinstatement of an attorney excluded from the practice by law or the order of a Court. The act is not retrospective, as it merely requires the party to swear that he has not committed any treasonable act *since* its passage. It does not relate to any act done *before* that time. It is not objectionable for uncertainty, because the first section prescribes two forms of oath, one for citizens, and the other for aliens. None but citizens are eligible to admission to practice law under the statute, and therefore the form for citizens is the only one applicable to attorneys. The idea that every person has a constitutional right to eligibility to office, unless convicted of crime, is a mere speculative theory, not founded upon any constitutional provision. If true, what right has the Legislature to exclude negroes from holding office ? If it was intended to mean that all voters have the constitutional right to hold office, we find nothing in the Constitution to sustain any such position. But it is not necessary to investigate this question; for, as we have already shown, the practice of law is not an " office." The right of the Courts to exclude attorneys for loss of moral character, malpractice, or offenses not punishable as a crime, is established beyond all question, and it has never been claimed that such action was prohibited by the Constitution. The power of the Legislature to impose such conditions and qualifications upon the exercise of the privilege as they might deem proper, has been fully established. The possession of a " good moral character " has always been deemed an essential qualification for an attorney ; and the Legislature might well deem a person who was unwilling to take the oath of allegiance as lacking in that necessary quality, and as unworthy of the high honors and the great privileges and responsibilities attached to the profession. The policy or impolicy of the law is not, however, a question for us to determine. That is a matter for the exclusive consideration of the law-making power. Our duty is simply to determine whether the power to pass the law exists.

The powers and privileges of a lawyer are extensive, and of great importance to the public interests. The Legislature and the

Courts have always carefully guarded the profession against being degraded or corrupted, that it may command the confidence and respect of the public.    The safety of the Government and the security of popular rights depend, in a great degree, upon the purity of the bench and the bar.    If treason is allowed to find its advocates among their members, the very existence of the Government and the liberties of the people are endangered.    It is therefore the solemn duty of the legislative authority to provide the necessary means to purge the profession of every taint or suspicion of treason.    The Legislature of this State have attempted to perform that duty, by the passage of the act now under consideration, and it should be sustained by the Courts, unless they have clearly exceeded their constitutional powers.    It is not open to that objection, as we have shown, and is therefore valid, and must be enforced accordingly.

It is insisted, however, that the payment of the United States revenue tax amounts to a license from the National Government to practice during the term for which the tax is paid.    Sec. 67 of the United States Revenue Law of 1862, provides " that no license hereinbefore provided for, if granted, shall be construed to authorize the commencement or continuation of any trade, business, occupation, or employment therein mentioned, within any State or Territory of the United States, in which it is or shall be specially prohibited by the laws thereof, *or in violation of the laws of any State or Territory.*"    This position is therefore untenable.

2. The next question is whether that portion of the act which relates to parties to actions is constitutional or not.    Much that has already been stated respecting the law as it bears upon attorneys, applies equally to litigants; but there are some provisions of the Constitution which are claimed to release litigants from the duty of obeying it which are not applicable to attorneys.    Thus it is urged that Sec. 1 of Art. 1, declaring that " all men have the inalienable right by nature of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing safety and happiness," is violated by this act, as litigants are prevented from protecting their lives, liberty, and property, by the aid of the Courts, and that it has the effect of taking the property of one man and

Cohen v. Wright.

giving it to another, thus depriving the litigant of his property without due process of law. The great natural right to life, liberty, and property, is fully recognized by this section of the Constitution. These rights are guaranteed to all who do not infringe upon the rights of others, or forfeit them by crime. They are not in any way impaired by the act in question, for all persons have the same right to enjoy and defend their lives and liberties, and to acquire, possess, and protect their property, as before. Under this provision of the Constitution, the Legislature has no power to pass a law depriving A of his life, his liberty, or his property, or authorizing B to deprive him of them, or divesting A of his property and vesting it in B; nor has it attempted to do so by this act. These great rights are founded in the law of nature, but nature has provided no Courts in which contested claims can be litigated or admitted rights can be enforced. Hence arises one of the necessities of a Government, which is instituted for the very purpose of protecting and securing these natural rights, as is declared by Sec. 2 of Art. 1. The Government owes the duty of protection to the people in the enjoyment of their rights, and the people owe the correlative duty of obedience and support to the Government. The one is dependent upon the other. The Government cannot justly claim obedience when it refuses protection. The citizen cannot demand protection without he renders the equivalent of obedience and support. In other words, all persons owing allegiance to the Government, or residing within its jurisdiction, owe to it obedience to its Constitution and laws, and aid and support against all who seek its destruction. When the citizen or resident refuses to render this obedience and support; when he aids, assists, countenances, or encourages those who are struggling to overthrow the Government, he no longer has a just claim to the aid of the Government to enforce his rights. He forfeits all right to the use of its Courts of Justice, and he has no just cause to complain if they are withdrawn from his use, for he has voluntarily broken the conditions upon which his right to demand their aid is founded.

There is nothing in the Constitution which prohibits the Legislature from closing the doors of the Courts against traitors and their aiders and abettors; or which requires that this shall not be done

Cohen *v.* Wright.

until after conviction of the crime, in a regular criminal trial; or that prohibits the Legislature from requiring of those litigating in the Courts that they shall purge themselves, by their own oath, of the imputed offense, before they shall claim their aid. The treasonable acts may be so extensively and secretly committed, that the ordinary course of a criminal trial would be entirely ineffectual to stay the evil. The litigant has no just right to complain, for it is his own voluntary or willful act that closes the doors against him. The law warned him what the result would be, and although it may be severe, it is a consequence of his own voluntary violation of the fundamental rights of society. The law may be a very efficient means of preventing the spread of treason and rebellion. It brings one of the consequences of treasonable conduct directly home to those who have something at stake—something to lose if the Government is overthrown—something to gain if it is sustained. Without it, traitors might recover, by the aid of the Courts, the very means to destroy the Government, by aiding and assisting the rebellion, and thus the Government would be furnishing the instruments to assist in its own destruction. The objection that it is treason against the United States, and not the State, that is made the ground for excluding the litigant, is not valid. We are one nation, one people, and the States are but parts of one whole; and whatever tends to destroy the nation affects equally each State. The National Government is supreme within its sphere, and this includes, among others, the exclusive power to declare war and make treaties—the greatest powers attached to the idea of sovereignty. In all these matters the States are but subordinate. When war exists it is against the nation, which includes every State; and therefore treason, in aiding those at war against the nation is equally treason against the State. But whether such be the legal technical effect, or whether all treason is not committed against the nation, which is the war-making, and thus, truly, the sovereign power, can make no material difference; for, as one State of the Union, California has the right to deny the use of her Courts to those who have committed, or intend to commit, treason against the nation, of which it forms a large component part, and which it is bound to sustain by all the means in its power.

It is also objected that it deprives a party of all remedy for the enforcement of his rights, and, therefore, impairs the obligation of contracts. We view it as imposing a new and further condition upon litigants, and not as a deprivation of all remedies. This condition is that the party shall, when required, make and file an affidavit that he has not and will not do an act, which, if done, would forfeit his right to the protection of the State. Our statutes have always imposed conditions upon those seeking the aid of the Courts. A stamp duty is imposed and also a tax for the Judge's salary fund. To procure an attachment, order of arrest, or an injunction, affidavits and bonds are required. In divorce suits the complaint must be verified, and in all these cases the proceedings and actions will be dismissed if the conditions are not complied with. Another long established condition is, that the suit must be brought within a certain time or it will be dismissed, and the cause of action deemed barred. The law under consideration merely requires the filing of an affidavit in certain cases, with the liability of having the suit dismissed and the cause of action barred if not complied with. All the remedies provided by law are open to him, and it is his own fault if he does not avail himself of them.

In our judgment it is a matter of State policy within the control of the Legislature. In Connecticut a law was passed declaring that no action shall be maintained for liquors sold, and it was held that an action on a note given in New York for liquors sold there could not be maintained, as it was against the policy of their laws, and that the law did not impair the obligation of contracts. (*Reynolds* v. *Geary*, 26 Conn. 179.) So of contracts tainted with usury ; a law refusing all remedy to enforce them, or giving a remedy after it had been taken away, was held not to impair the obligation of contracts, even when it applied to past transactions. (*Baugher* v. *Nelson*, 9 Gill. 300). The Court says : " There can be no vested right to do wrong," citing *Satterlee* v. *Matthewson* (16 S. & R. 191) : " In the nature of things there can be no vested right to violate a moral duty or to resist the performance of a moral obligation." We consider the same rule applies to political duties and obligations—that is, duties and obligations due to the Government.

An Act of Missouri was passed in 1847 suspending all actions against volunteers until the return home of the company to which they belonged.   The Court said : " Parties where contracts have not been fulfilled according to their terms, and who are therefore compelled to resort to the judicial tribunals for their enforcement, must take the remedy given by law at the time, without regard to the remedy in force at the date of the contract." And it was held that the law did not impair the obligation of contracts. (*Edmunson* v. *Ferguson*, 11 Mo. 344.) The Legislature has the power to impose additional duties upon a party in order to preserve and secure his rights, and if he fails to comply with this duty it is a voluntary abandonment of his right. (*Tarpley* v. *Hamer*, 9 S. & M. 310.)

The act in question relates entirely to the remedy, and it is well settled that the Legislature may vary the nature and extent, and prescribe the time and mode in which remedies must be pursued ; and it is only when a statute takes away all means of enforcing the obligation of contracts, so that no redress remains, or so incumbers the remedy with conditions as to render it useless or impracticable to pursue it, that it can be held to violate this provision of the Constitution.   (2 Story on Cons., Sec. 1385 ; *Bronson* v. *Kinzie*, 1 How. 311.)   This is the rule properly deducible from the decisions upon this question, and it clearly recognizes the right to impose conditions upon remedies, and defines the extent of this right.    In our judgment, this act does not so burden the remedy as to render it useless or impracticable, and it does not, therefore, violate this provision of the Constitution.

The statute has declared that a sentence of imprisonment in the State Prison suspends all civil rights of the party sentenced, during the term of imprisonment, and one sentenced for life is deemed civilly dead.   (Wood's Dig. 353, Sec. 145.)   Here all remedies are suspended or taken away, yet we are not aware that the constitutionality of such a law has ever been doubted.   The requirement that a party suspected of disloyalty, one of the greatest of crimes, shall purge himself by oath of the imputed offense, before he is permitted to use the Courts to enforce his rights, is not unreasonable or burdensome.   Difficulties and hardships have been sug-

Cohen *v.* Wright.

gested about enforcing the law, as in an action by two plaintiffs one might take the oath and the others refuse, and cases of non-residents or foreigners who never heard of the law.   We see no hardship in closing our Courts against foreigners, who may have built or fitted out ships to destroy our commerce under the rebel flag.   But the case before us presents none of these questions, and we do not deem it necessary now to pass upon every supposable case that able counsel might suggest.

The questions involved in this case are novel and important, and we have given them a careful investigation, and our conclusion is that the act in question is constitutional and valid, and should be enforced accordingly.

The objection to the appearance of Mr. Highton, as attorney for the appellant, is sustained, and the judgment of the Court below is affirmed.

NORTON, J.—Sec. 3 of Art. 11 of the Constitution of this State requires that officers, before entering upon the duties of their office, shall take an oath that they will support the Constitution of the United States and the Constitution of this State, and provides that " no other oath, declaration, or test shall be required as a qualification for any office or public trust."   It is objected that the oath required by the Act of 1863, to be taken by attorneys at law, is a violation of this provision of the Constitution.   I think the oath prescribed by the Act of 1863 is a different and " other oath" from that specified in the Constitution, certainly in that particular which requires the attorney to make oath that he has not, between the passage of the act and the taking of the oath, aided or encouraged, etc., the so-called Confederacy.   The constitutional oath is strictly prospective, and only a pledge as to future conduct.   Such provisions of a Constitution should be applied according to their direct and obvious meaning, and should not be extended to cases which can only be brought within their disqualification by doubtful construction.   But I am satisfied, for the reasons given in the opinion of Justice Crocker, that an attorney at law is not a person holding an " office or public trust" within the obvious meaning of those terms as used in the Constitution, and that this objection is for that reason invalid.

22

Various other provisions of the Constitution are appealed to for protection against the requirements of the Act of 1863, as well in regard to attorneys at law as to litigants, but none of which can, in my judgment, be made applicable except by a strained interpretation, not in accordance with their well-understood purpose and their settled meaning.

It is urged, that the requiring of oaths and tests as a condition upon which a citizen shall be allowed to pursue a calling, or to assert or defend his rights in Courts, is contrary to the spirit of free Governments and of our State Constitution, as evinced in the provision above quoted. If this be so, and if it might be reasonably claimed that the law in question was a violation of this policy, it is not a reason for a Court to pronounce a law of the Legislature void. A Court can only do this in case the law violates some distinct provision of the Constitution, and not upon the vague ground that it violates its spirit. I am unable to see that the law in question violates any such provision of the Constitution, and therefore agree that the attorney who has refused to take the required oath cannot be allowed to appear in the case, and that the judgment must be affirmed.