People v. Burbank.

PEOPLE *ex rel.* ATTORNEY GENERAL *v.* BURBANK.

When a District Judge is elected by the people on the occasion of a vacancy in the office, he is, under the Constitution, elected for a full term of six years.

And this though the proclamation of the Governor for the election is for the unexpired term of his predecessor.

The function of the proclamation is not to proclaim the law, but the fact of the vacancy. It cannot change either the law or the Constitution.

The Constitution, though it fixes the period of the tenure of the office of District Judge, does not fix any day for the commencement of the term; and if it did, it would not follow that it applies to Judges afterwards elected to new districts. Nor would it result, that the Judge elected in consequence of a vacancy, was necessarily elected to fill such vacancy.

All the Constitution means by the expression "during the term," as used in sections fifteen and sixteen of article sixth, is, during the time or period for which the officer is elected.

When the Constitution says the Judge shall hold his office for six years, it means that this period of six years is the term of his office; it is that quantum of time assigned to him by the Constitution as his period of the enjoyment of the office, and this quantum may not improperly be called a term.

The Legislature can direct the time and prescribe the mode of electing District Judges, but cannot change the tenure of the office; hence, so much of the Act as limited the period of incumbency, is void.

An Act may be void, in part, for its unconstitutionality, and good, so far as it is constitutional.

People *ex rel.* Brodie *v.* Weller, Governor, (11 Cal. Rep. 77) affirmed.

APPEAL from the Twelfth District, County of San Francisco.

This was an action to try the right to the office of District Judge of the Fourth Judicial District.

The facts, as stated in the opinion of the Court, are as follows: In 1852, at the general election, Delos Lake was elected Judge of the Fourth District for six years from first of January, 1853. In June, 1855, he resigned, and the Governor appointed J. S. Hager to fill the vacancy until the election in 1855. In July, 1855, the Governor issued his proclamation, in pursuance of law, for the election in September; in which proclamation was included this office—styling the officer to be elected a District Judge for the unexpired term of Delos Lake, resigned. The Board of Supervisors also gave notice in the same way. At the election, Hager was elected—was commissioned in

this form—and entered on the office, and held it until the general election of 1858, when Caleb Burbank was voted for, and received a majority of the votes for this office.   All the proceedings were regular in form, and he was commissioned by the Governor in due form—qualified, and entered upon the office.   This proceeding is taken to oust him, upon the claim that Hager is entitled to the office.

The Court below held, that "Burbank is rightfully and legally in the possession of the office of Judge of the Fourth Judicial District or the State of California, and that he did not unlawfully usurp said office, as in the information alleged."   Relator appealed to this Court.

*Hall McAllister* for Appellant.

Counsel reviewed at considerable length the history of the legislation in this State respecting the Judiciary, and then argued as follows :

II. Legislative exposition of constitutional provisions is never entitled to much weight.

The supineness, carelessness and ignorance of legislators, are matters of complaint, not only in this State, not only in other States of the Union, but also in England.   We constantly find the English Judges bitterly complaining of the supineness and neglect of Parliament in the matter of legislation.   Dwarris on Statutes, 551, 556, 708.

In England, Parliament are omnipotent, and are therefore only called upon to see that their statutes do not conflict with each other ; whereas American Legislatures must look not only to this, but must also bring each Act they pass to the test of the Constitution.

When legislative exposition should be resorted to, and the weight which should be given to it.   Smith's Statutory Law, secs. 289, 290, 291, 292 ; Dwarris on Statutes, 562.

III. In the construction of a constitutional provision *restrictive* or the power of the Legislature, legislative exposition should *never* be resorted to.   Smith's Statutory Law, secs. 293, 295, 296; *Vide* also, *Ibid.*, sec. 290.

The present case is one where the constitutional provisions are *restrictive* of the power of the Legislature.

The Constitution substantially declares (art. 6, sec. 6 ; art. 11, sec.

8) that the Legislature shall not interfere with "the duration of any office" which has by it been "fixed."

IV. Legislative exposition has not been regarded by this Court, heretofore, as a guide in construing the Constitution. *In re* Holdforth, 1 Cal. R. 438; Cauldfield *v*. Hudson, 3 Cal. R. 389; Reed *v*. McCormick, 4 Cal. R. 342; Exline *v*. Smith, 5 Cal. R. 112; Burgoyne *v*. Supervisors of San Francisco, 5 Cal. R. 1; Guy *v*. Hermance, 5 Cal. R. 73; Dickey *v*. Hurlburt, 5 Cal. R. 343; Zander *v*. Coe, 5 Cal. R. 230; The People *v*. Applegate, 5 Cal. R. 295; The People *v*. Nevada, 6 Cal. R. 143; The People *v*. Johnson, 6 Cal. R. 500.

V. The only true exposition of the Constitution is a judicial one.

The judicial attribute has been lodged by the Constitution, not in the hands of the Legislature, but with the Judiciary—a distinct coordinate department of Government.

The idea has no force, that the Judiciary must, in any degree, yield to the crude opinion of the Legislature concerning the Constitution, when that Legislature is deciding as to its own powers.

It will not do for the Legislature to sit as Judge in their own case.

VI. The Constitution fixes the judicial tenure of appellants at six years.

The District Judgeship is a constitutional office; hence, (in considering its nature, character, jurisdiction, duration, and the like) we must disembarrass our ideas of all statutory regulations, and look solely to the organic law—the Constitution. Constitution, art. 6, sec. 5. Here we have a constitutional office, and a constitutional tenure affixed to its incumbent.

The office itself, and the tenure of its incumbent, are beyond the reach of legislative enactment.

Upon the subject of tenure, the framers of our Constitution need not have added a single word additional to the expression "for the term of six years."

That provision alone would have been fully sufficient for appellant's case.

But article 11, sec. 7, is perhaps even more explicit; for it substantially forbids all legislative interference with "the duration of any office fixed" by this Constitution.

People v. Burbank.

But is the system marked out in the Constitution for this office of District Judge, complete ?   Are contingencies provided for—death or resignation ?

Constitution, art. 5, sec. 8 :   When, therefore, a vacancy accrues, for any reason, in the office of District Judge, the Governor has constitutional power to fill the office until the " next election by the people."

Our argument is plain, and nothing can be more simple than the operation of the system appointed (fully and completely) for the office of District Judge.

Resignation or death occurring, the office becomes vacant; the Governor appoints for the interim until the next general election by the people.   The people elect at the constitutional time (to wit, the next general election after the vacancy in the office occurs, which is always a time uncertain, the period of the general election being entirely under control of the Legislature) to a constitutional office for the constitutional tenure.

Is there any possible defect in this system ?   Is there any contingency unprovided for ?   Is there any reason why this plain, simple and complete plan, marked out in the organic law, should not be enforced ?

Neither can a single argument be adduced against the policy of this system, while there are many obvious suggestions in its favor.

By always making the tenure  of elected District Judges six years, the value, dignity, independence and utility of the office are preserved ; while to split up the constitutional tenure into one, two, three, four years, as may chance, greatly tends to impair, if not to entirely destroy, these important attributes.

These views are asserted by this Court in People ex rel. Brodie v. Weller, 11 Cal. Rep. 77.

The idea of fixed terms identical for the whole State, having a certain commencement and fixed termination, appointed by the Constitution, was thoroughly and utterly denied by this Court in the People ex rel. Brodie v. Weller.

A Judge elected to fill the unexpired term of a previous incumbent who had died, is entitled to hold the full constitutional term.   Shelly v. Johnson, Dallam, 597, cited in Texas Digest, p. 268 ; Roman v.

People *v.* Burbank.

Moody, Dallam, 512, cited in Texas Digest, p. 386; Wammach *v.* Holloway, 2 Ala. R. 31.

Where the term of office is fixed by the Constitution, each succeeding incumbent, although elected to fill a vacancy, is entitled, unless it is otherwise provided in the Constitution, to hold the office for the full period.    Bunton *v.* Wilson, 4 Texas R. 400; Marshall *v.* Harwood, 5 Maryland, 423; Hughes *v.* Buckingham, 5 Sm. & M. 632; Powers *v.* Hunt, 2 Humphrey's R. 24; The People *v.* Green, 2 Wend. R. 266; The People *v.* Coutant, 11 Wend. R. 511; The People *v.* Garey, 6 Cowen, 642.

The Constitution of the State of California does not fix the time of the commencement of the term of the District Judge.    Constitution, Art. VI, sec. 5; The People *v.* Weller; The State of Ohio *v.* Nebling, 41, 42, 43.

The respondent's counsel has pertinaciously argued that the Constitution appoints a certain commencement and termination for the term of the District Judges, and yet has even failed to show that the commencement of the term of the first original nine districts is appointed by the Constitution.

By the statute of 1850, nine Judicial Districts were established. By the Act March 11, 1851, eleven Judicial Districts were made. By the Act May 15, 1854, twelve Judicial Districts were created. By Act April 16, 1855, fifteen Judicial Districts were established. By a recent statute, the number of Judicial Districts has been increased to eighteen.

If these fixed terms, with certain constitutional commencement and termination, are non-existent, whence does the respondent derive "unexpired term," "balance of term," etc., which form the burden of his argument?

If a District Judge dies, there is a vacancy in the office, not a vacancy in his term.    There cannot be said to be a vacancy in his term, for the term has ceased to exist.    There is no fixed term having a duration beyond the life of the judicial incumbent.

The Constitution attaches the term to the Judge, not to the office. Constitution, Art. VI, sec. 5.

The Constitution, speaking of District Judges, says:    "Said Judges

shall be elected by the qualified electors of their respective districts at the general election, and shall hold their office for the term of six years." That is—*all* District Judges shall hold their office for the term of six years.

There is no exception suggested; there is no language from which any can be implied. The constitutional clause applies generally to all District Judges.

Notice also the imperative character of the language used—" *shall hold.*" The expression is positive and emphatic.

The declaration of the Constitution—that District Judges shall hold their office for the term of six years—is an express contract with every Judge duly elected by the people, that he shall have that tenure. An open offer is made by the Constitution, and, when accepted by election and qualification as Judge, the compact is complete.

A reference to the Constitutions of the various States of the Union, clearly establishes, that when the framers of a Constitution have created a constitutional office, established the duration of the term for which it shall be held, and have desired, that in case of a vacancy by death or resignation, the office should be filled by a new incumbent only for the residue of the term during which his predecessor would have held, they have so distinctly expressed themselves in the Constitution.

Constitution of New York, Art. VI, sec. 13; Constitution of Mississippi, Art. IV, secs. 2, 5, 20, 21; Constitution of New Jersey, Art. VI, sec. 6, subd. 1 and 2; Art. VII, sec. 2, subd. 2; Constitution of Louisiana, Title IV, arts. 63, 67; Constitution of Kentucky, Art. IV, secs. 3, 6, 7, 11, 13, 23, 26; Constitution of Michigan, Art. VI, sec. 14; Constitution of Wisconsin, Art. VII, secs. 4, 9.

*Hoge & Wilson* for Respondent.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

More in deference to the earnest and ingenious argument of the respondent's counsel, and the interest of the question, than from any sense of the intrinsic difficulties of the subject, we have thought it

proper to go into a full discussion of the points presented by this record, and to a reconsideration of our former decisions upon this matter. The facts may be thus briefly stated : In 1852, at the general election, Delos Lake was elected Judge of the Fourth District, for six years from first of January, 1853. In June, 1855, he resigned, and the Governor appointed J. S. Hager to fill the vacancy until the election in 1855. In July, 1855, the Governor issued his proclamation, in pursuance of law, for the election in September, in which proclamation was included this office—styling the officer to be elected a District Judge for the unexpired term of Delos Lake, resigned. The Board of Supervisors also gave notice in the same way. At the election, Hager was elected—was commissioned in this form—and entered on the office, and held it until the general election of 1858, when Caleb Burbank was voted for, and received a majority of the votes for this office. All the proceedings were regular in form, and he was commissioned by the Governor in due form, qualified, and entered upon the office. This proceeding is taken to oust him, upon the claim that Hager is entitled to the office.

The question being as to the effect of Hager's election, we are called upon to construe the provisions of our Constitution, and to test by them the validity of the Acts of the Legislature under which the respondent claims. The preliminary propositions of the learned counsel for the respondent are not disputed ; we yield to them our cordial sanction and entire approval. The delicate office of declaring an Act of the Legislature unconstitutional and void should never be exercised, unless there be a clear repugnancy between the inferior and the organic law. Courts have no legislative powers ; they are merely the organs of laws already made ; they can do no more than construe and give effect to them. But the power of declaring a particular statute unconstitutional, necessarily results from this very duty, since they could not declare the paramount law at all, if it were destroyed or nullified by the Legislature ; they are bound to declare not only the law made by the Legislature, but that superior law to which the Legislature owes its existence. We concede, also, that a long and consistent recognition by the Legislative and Executive Departments of the Government, of the constitutionality of a system of laws, by reference to which the State Gov-

ernment has been guided, furnishes a still further reason for extreme caution on the part of the Judges in the exercise of this power; but we do not concede, in this particular instance, the force which the learned counsel claims for the argument. Without reference to the circumstances of extraordinary difficulty and embarrassment which characterized the early history of California legislation, something perhaps might be urged against the authority of usage and passive acquiescence, when the short and feverish period of our political and social experience is considered. Only a few years have elapsed since California was admitted as a State into the Union, and if, as the counsel suggests, many events have been crowded into that brief space, it must be remembered, too, that Legislatures and people have been diverted in no ordinary degree by that very cause, from the attention given in older States to matters of government. The legislation of the State has been a signal illustration of this want of care, and the statute book is replete with crude and unconstitutional legislation; and if full effect were given to the argument, it would be impossible to say to what extent the Constitution would be altered. It is certain that the same course of argument so much insisted on, would, if effect were given to it, validate the entire State debt, and affirm the power of the Legislature to incur any conceivable amount of indebtedness for the future. Moreover, we might urge that the constitutionality of the laws under review never was, in any way, recognized by the Judicial department; we say in no way, for the mere fact that judgments of Judges holding under the law have been brought into this Court and passed on, proves nothing; this Court could take no notice of the persons rendering the judgment—no point being made as to their authority—nor could there have been, as the Judges were in office with a color of right, and in undisputed exercise of judicial functions. Besides all this, the question is not of the nature calculated to challenge sharp criticism or much inquiry. The Judges being in office without dispute as to title, and elections occurring at unfrequent intervals until the periodical elections, few men thought or spoke on the subject, until the case was brought for judgment directly before this Court. We think it a mistake to suppose that there has been, at any rate of late years, no question in the mind of the profession upon this point; the reverse is the fact,

from the time when the subject began to be discussed ; so soon as the question was made in this Court, it was decided.

Nor is this a matter, as seems to be intimated, like many of those which, being once declared or acted on by the Legislature for a series of years, is protected by public policy—that policy which turns a Court instinctively from a scrutiny into the foundations of laws long established, and which, when overturned, carry down with them vested interests and rights, or create general confusion.   The question, in its immediate results, is turned into a mere question of personal right and interest between two men.   Every act done by a Judge, acting as such under a commission, and in open possession of the office, whether rightfully in office or not, is to all intents and purposes as valid, so far as third persons are concerned, as if he were both Judge *de facto* and *de jure*.   We suppose this principle cannot be disputed.   There is but little difference between an old Act and a new Act, so far as this question of acquiescence is concerned, if nothing or little have been done under the Act, or if no rights have vested under it.   We think upon this question, then, we can proceed to construe the law, without any very controlling obstacle to our consideration of it, arising from the past history of the Government.   But as this argument has been very much pressed, it may not be out of place to inquire into the particular facts upon which it is based.

The first Act passed on the subject was that of March 16th, 1850. St. 1850, p. 95, sec. 23.   Act of the same year, p. 101, does not make for the respondent : Act of 1850, April 11, 1850, p. 206, sec. 46, though loosely drawn, and omitting any provision for supplying the vacancy of County Judges, does in sec. 46 support respondent's claim by providing for vacancies in office " for the unexpired term." By the Act of April, 1851, the forty-sixth section of the Act of 1850, April, was (in effect) amended so as to provide for County Judges. In the Act of 1853, vacancies are provided for, but nothing said as to the tenure.   The other Legislatures have done nothing to indicate their views on the question.   The various Acts of 1850 and 1851, except the sections noticed, seem rather to lean to the side of the appellant ; but it can hardly be contended that two Acts of the earliest of California Legislatures, passed before the Judiciary were organized under the

People v. Burbank.

popular elective system, should possess the controlling weight of an authentic exposition of the Constitution.

We must, therefore, try this question by the Constitution, and here we find our chief difficulty; it is the difficulty of making clearer what the Constitution has made palpable. We might agree with the learned counsel, that the Constitution must generally be construed more by its own terms than by the aid of authorities from other States; but this is only true when there is something peculiar in the matter to be construed. If the same words, in the same or similar contexts, have elsewhere received a definite construction, the authority is entitled to the same weight in this as in other cases. The words, however, are plain enough of themselves. The first section of article sixth of the Constitution provides that the judicial power shall be vested in a Supreme Court, in District Courts, in County Courts, and in Justices of the Peace. Section five provides that the State shall be divided by the first Legislature into a convenient number of Districts, subject to such alteration, from time to time, as the public good may require; for each of which a District Judge shall be appointed by the joint vote of the Legislature at its first meeting, who shall hold his office for two years from the first day of January next after his election; after which said Judges shall be elected by the qualified electors of their respective Districts at the general election, and shall hold their office for the term of six years. If the question turned on the meaning of these words— "*the said Judges shall hold their offices* for the term of six years," we apprehend no dispute would arise as to the meaning. That "six years" applied to *all* the Judges, do not mean one, two, three, or four, or five years, is plain enough. The language is general; it embraces *all* the Judges; it refers to the offices of all; declares how they shall be filled, and the duration of the enjoyment. If the Convention meant to say that certain terms should be assigned to the office of Judge, and those terms filled without reference to the number of incumbents, the apt words to express this idea would have been employed, just as in the Constitutions of New York, Louisiana, Kentucky, and other States, language was used to convey the idea. Thus, in New York, when speaking of Judges, " if the office become vacant before the expiration

of the regular term for which he was elected, the vacancy may be filled by appointment by the Governor, until it shall be supplied at the next general election of Judges, when it shall be filled by election for the residue of the unexpired term." But this and like provisions in other Constitutions were wholly unnecessary, according to the adverse construction. If it were expedient that District Judges should be elected for a term of six years when first filling the office, what reason or sense is there in the fact that the new Judge is the successor of a Judge who had not filled out his term, which should alter the rule ? But two answers can be given : that the Judges are classified, (but there is no classification provided for by our Constitution) or else, to secure conformity of elections ; but this policy is not indicated, and is in fact impracticable.

We come now to see how these same words, or similar words, are construed in other States, and then we will examine whether there is anything in other provisions of the Constitution which affects the language quoted. In the People v. Garey, (6 Cowen, 646) it was held that the seventh section of the fourth article of the Constitution of New York, which declared that persons appointed to the office of Justices of the Peace, should hold office for four years, inhibited the Legislature from increasing or diminishing this term, and that this could not be done by the creation or division of the counties. The counsel did not pretend, in that case, that the Legislature had this power directly, but it was contended that they had the power to make new counties ; and if the Justice was no longer a resident of the county for which he was elected, this removed him from office ; but the Court held otherwise. This case was affirmed by the Court of Errors of New York, (9 Cowen, 640). In People v. Green, (2 Wend. 266) this same question came up in another form. The provision of the then Constitution of New York is strikingly analogous to the section of our own. The eighth section of the fourth article declares that Sheriffs, etc., shall be chosen by the electors of the respective counties once in every three years, and as often as vacancies shall happen ; they shall hold no other office, and shall be ineligible, etc., and the Governor may remove them at any time within the three years for which they shall

People *v.* Burbank.

be elected, etc.    Judge Marcy said, " there is no express designation of the term for which Sheriffs shall hold their office, but it is fixed at three years by the strongest implication."

We extract a portion of the opinion of Justice Marcy, for the aptness of its application to the case :  " By the general provisions, elections for Sheriffs are not to be held oftener than once in every three years, except in cases of vacancy.   In what part of the Constitution is it declared, or from which of its provisions are we authorized to infer an exception, in the case of a person elected to an office, vacant by the death, resignation or removal of his predecessor ?   Why shall he not hold as long as he would have done if elected at the end of a full term ? It is the designation of the stated period for the election that fixes the term of holding, and this designation is applied to every election. Apply the language of the Constitution to a single county, to that of Cayuga, for instance ; it is, that the Sheriff of this county shall be elected once in every three years, and as often as a vacancy shall happen.   A vacancy did happen by the death of Hughes, and without the latter clause of the foregoing sentence, no election could have been held until three years from the previous one ; but I cannot infer from this clause any restriction upon the term of Green, the successor of Hughes.   It does not express or imply that he is to serve out only the residue of Hughes' term.   Green was elected, as I understand the provision, to fill the vacant office, and not merely to serve out the vacant term of his predecessor.   I am inclined to think that a diversity of opinion on this subject has arisen from different applications of the term ' *vacancies* ' in the section of the Constitution which we are now considering.   It has been sometimes applied to the office, as contradistinguished from the term of service, and at others, to the term of office. I understand it as applicable to the office alone.   When Green came into the office, he took it with all the rights, powers and incidents belonging to it under any circumstances, one of which was a term of three years.   The case of Sheriffs has been assimilated to that of Senators, who are declared by the Constitution to be chosen for four years ; but those chosen to fill vacancies, hold only for the residue of the unexpired term of their predecessors.   This limitation to the holding does not result from the fact that they are elected to fill vacancies, but

People *v.* Burbank.

from other parts of the Constitution from which it is necessarily implied. The provision classifying the Senators, and vacating the seat of one from each District in every year, could not be carried into effect if a Senator elected to fill a vacancy were to hold a full term of four years. But permitting a Sheriff to hold for three years in case he is elected to fill a vacancy, is not, like the case of a Senator, incompatible with any other part .of the Constitution." The same question again came up in 11th Wendell, 135, People *v.* Coutand, in the case of a Register, to whom the same words of the Constitution quoted in the last case applied. Chief Justice Savage took the same ground, re-affirming the decisions before cited. He says: " Taking the whole section together it is as if it read, 'Every person elected Sheriff, Register, etc., shall hold his office for three years, etc.' If such had been the phraseology, there would have been no reason for doubt; I think there is as little now." What is the difference " between persons elected as Judges," and " Judges shall hold their .offices" for six years ?

The Constitution of Tennessee is very similar to ours, providing that the people shall elect, etc., for the counties, one Sheriff, etc.; the Sheriff for two years, the Register for four. If a vacancy occur after the election, it is to be filled by the Justices until the election, when the office shall be filled by the qualified voters : Held by the Supreme Court, that the election of the Register, after the vacancy, was for the full four years. (Powers *v.* Hurst, 2 Hump. 24.) The Texas Constitution provides : " There shall be a Clerk of the District Court for each county, who shall be elected by the qualified voters for members of the Legislature, and who shall hold his office for four years. In case of a vacancy, the Judge of the District shall have the power to appoint a Clerk until a regular election can be held : Held that the person elected, though during the term which, if a vacancy had not happened, would have been that of the predecessor, holds for the period of four years. (Bunton *v.* Wilson, 4 Texas, 410.) Several other decisions have been made in the same State to this effect. The same principle is held in 5 Maryland, 451 ; Marshall *v.* Howard, 5 Smedes & Marshall. Hughes *v.* Buckingham, 649, holds the same general doctrine. That case is distinguished from Smith *v.* Halfacre, in 6 How., by the fact that by the Constitution of Mississippi, biennial elec-

tions were fixed on first Monday in November, and that day was fixed as the commencement of the term of officers elected at that election. But, as we have said in Brodie v. Weller, the Constitution of this State, though it fixes the period of tenure, does not fix any day for the commencement of the terms of the Judges. This position was vigorously assailed by the learned counsel, but, we think, without success. Nor, if we are mistaken in this view, does it at all follow, because a day of the commencement of the terms of judicial officers is given by the Constitution, that it applies to Judges to be afterwards elected for new Districts ; nor, if it did, would it result that the Judges elected in consequence of a vacancy, so to speak, must necessarily be elected only to fill that vacancy. We are unable to perceive the logical connection between the fixing of a particular day for an incumbent to take his office, and the extent of the period for which he is to hold it.

Other authorities might be added ; but in the absence of any opposing case—for Smith v. Halfacre turns upon matters peculiar to the Constitution of Mississippi—it is wholly unnecessary to adduce more authority to aid a construction which, really, needs no extrinsic support.

If we look from the words to the policy they were employed to declare, the result is the same. The Constitution of California shows a wise and peculiar solicitude to secure the independence of the Judiciary. For that purpose, it provides that the Supreme and District Judges shall not be eligible to any other office during the terms for which they shall have been elected ; and further, that their compensation shall not be increased or diminished during that term. When we see, in connection with these provisions, the unqualified declaration that the District Judges shall hold their office for the term of six years, and an express provision that the duration of offices fixed by the Constitution shall not be altered by the Legislature, we are constrained to the conclusion that the words fixing the period of tenure—by far the most essential means to the same end—were designed to be so construed as to be most effectual for its accomplishment. It is just and right that this should be so. A lawyer who abandons his business and clients, and surrenders all claims to other official promotion, should have some guarantee of the continuance of his office ; but this consideration

is nothing compared to the paramount policy of securing the impartiality and independence of Judges, which can be most safely assured by a tenure of respectable duration.

It is urged that the fifteenth and sixteenth sections of the sixth article of the Constitution control and limit, or show a different construction of the third section. Those sections simply provide that the Judges shall be ineligible, as before observed, and that their compensation shall not be increased or diminished during the term for which they shall have been elected. It is inferred, from this, that the Constitution has divided the office into fixed terms, to which the incumbents are appurtenant. But we think this is not true. All the Constitution means by the expression "during the term," is *during the time* or period for which the officer is elected. When the Constitution says the Judge shall hold his office for six years, it means that this period of six years is the term of his office ; it is that quantum of time assigned to him by the Constitution as his period of the enjoyment of the office ; and this quantum may not improperly be called a term. If A is elected District Judge, and enters upon the office, or accepts it for a day, he is disqualified for other office during the whole period of six years ; and so, after his election, it would not be competent for the Legislature to change the compensation. These observations we apply to the District Judges alone ; as we said in Brodie *v.* Weller, the provisions of the Constitution in respect to Justices of the Supreme Court are different in respect to terms.

The remaining question is as to the validity of Hager's election. It is said that the Act under which the election of 1855 was held, provided for the election of District Judges to succeed those who had not served for the full time for which they were elected, only " to fill an unexpired term ;" that the proclamation of the Governor was to the same effect ; and so the commission ; and hence, it is contended, that Hager was not legally elected. But we think this position is not well taken. The law required an election to fill this office. The Legislature could direct the time and prescribe the mode of the election, but could not change the tenure ; it could no more prescribe that the Judge elected should hold office for a part of a constitutional period than for double the time ; the function of the proclamation was not to proclaim

People v. Burbank.

the law, but the fact of a vacancy; the proclamation cannot change the law, much less the Constitution.    So much of the Act as limited the period of incumbency is void; but it is well settled that though an Act may be void, in part, for unconstitutionality, it is good so far as constitutional.    This has been often held.    The observations of Mr. Justice Huger, of the Constitutional Court of South Carolina, state very clearly the rule on this subject :    " If a commission, issued by the Governor, cannot control the provisions of an Act of the Legislature, neither can an Act of the Legislature control a provision of the Constitution ; and for the same reason, neither possess original power ; in both it is derivative ; each, therefore, must be governed by the authority under which it acts.    Supreme power exists in the people alone.    They have, by the Constitution, declared what portion of that power shall be used by the different departments—neither has a right to encroach upon the other.

" If the people declare and ordain in their Constitution, that an office shall be held by a particular tenure, or that the obligation of a contract shall not be violated, it would be as much usurption in the Legislature to alter that tenure, or violate the obligation of the contract, as it would be in the Governor to commission for a longer period than directed by the Legislature.

" It is made the duty of the Judiciary to enforce the paramount law ; and it is unworthy of consideration, whether it be an Act of the Legislature conflicting with the commission of a Governor, or a provision of the Constitution with an Act of the Legislature, or two Acts with each other.    In every case, the Judges are bound to use their utmost discretion."    And the same Court said in another case :    " The Governor, in granting a commission, acts ministerially, and therefore ought to make it conform to the law and to the Constitution.    The commission does not confer the office ; it is only evidence of it, and cannot change the tenure by which the Constitution declares that it shall be held.    As soon as an ordinary is elected, he is in office under the Constitution, and entitled to all the rights and immunities conferred by that instrument."

We have thus, more at length than the difficulties of the case warranted, given our views upon this subject.    It is important that the law

upon the question should be settled, so that it may be understood for the future; and to that end we have reconsidered the case of Brodie *v.* Weller, and re-affirm it. The principles there laid down are conclusive of the merits of this action.

The judgment of the Court below is reversed, and judgment ordered to be entered in the District Court for the appellants.