[S. F. No. 12508. In Bank.—January 10, 1928.]

In the Matter of the Estate of GRATTAN D. PHILLIPS, Deceased. GRATTAN D. PHILLIPS, Jr., Appellant, v. MARGARET A. PHILLIPS, Administratrix, etc., et al., Respondents.

Harry I. Stafford and R. P. Henshall for Appellant.

John L. McNab and Byron Coleman for Respondent.

Eloise B. Cushing and Thomas A. Keogh, *Amici Curiae.*

CURTIS, J.—This is an appeal from an order denying the petition of Grattan D. Philips, Jr., for a partial distribution of the estate of Grattan D. Phillips, deceased. Grattan D. Phillips died intestate in the city and county of San Francisco on the twenty-seventh day of November, 1925,

leaving an estate consisting of real and personal property. He also left as his sole heirs at law Margaret A. Phillips, his surviving wife, and two children, Virginia Grattan Phillips and Grattan D. Phillips, Jr., the appellant. The petition of appellant for a partial distribution of said estate, in addition to the foregoing facts, set forth the appointment of the said Margaret A. Phillips as administratrix of the estate of said deceased; that more than four months had elapsed since the issuance of letters of administration to the said administratrix, and that no distribution had been had; that the value of the estate left by said deceased was in excess of $450,000, and that said estate was but little indebted. Petitioner, the appellant herein, therefore asked for an order of court distributing to him as an heir at law of said deceased the sum of $50,000 from the property of said estate. Margaret A. Phillips, individually and as administratrix of said estate, filed an answer to said petition, and the matter was heard upon said petition and the said answer thereto. Among other things the court found ''upon stipulation of the parties, said decedent and Margaret A. Phillips were married in the year 1893, and the bulk of the estate of said deceased is community property and was acquired prior to 1923,'' and ''That said estate left by the deceased consists of real and personal property and is of the approximate total value of $400,000.'' It is further set forth in the findings that ''It was stipulated by the parties in open court that the sole question to be determined on the hearing of said petition was the right of said Grattan D. Phillips, Jr., as surviving son of said deceased, to have distributed to him any portion of the estate of said deceased consisting of community property left by said deceased.'' Upon the findings the court made the following conclusion of law and order: ''That said Grattan D. Phillips, Jr., is not entitled to have distributed to him any portion of the estate of said deceased, and that his petition for partial distribution be and the same is hereby denied.''

Prior to the amendments to sections 1401 and 1402 of the Civil Code in 1923, the succession of community property upon the death of the husband was governed by section 1402 of said code, which read as follows: ''Upon the death of the husband, one-half of the community property goes to the surviving wife, and the other half is subject to the testa-

mentary disposition of the husband, and in the absence of such disposition, goes to his descendants, equally, if such descendants are in the same degree of kindred to the decedent; otherwise, according to the right of representation; and in the absence of both such disposition and such descendants, is subject to distribution in the same manner as the separate property' of the husband. In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and the charges and expenses of administration.''

In 1923 said sections were amended and as amended section 1401 regulated or attempted to regulate the succession to community property upon the death of either the husband or wife. Upon this appeal we are not particularly concerned with section 1402 as amended in 1923. After its amendment in 1923, said section 1401 read as follows: ''Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of section one thousand four hundred and two of this code.''

The trial court was evidently of the opinion that section 1401 of the Civil Code, as amended in 1923 and as in force at the death of said intestate, controlled the disposition and distribution of the community property, and held according to the terms of said section, that upon the death of said Grattan D. Phillips, without leaving any will the whole thereof descended to his surviving wife, the respondent herein—one-half thereof by virtue of her interest in the community property and of her survival of her husband, and the remaining half thereof due to the fact that the said deceased made no testamentary disposition of said remaining half.

 It is clear that said section 1401, as amended in 1923, in so far as it provides that the wife in case of the death of her husband intestate shall inherit the half of the community property which was subject to his testamentary disposition, is a statute of descent and succession, or a rule of inheritance. It is also equally clear that the law of inheritance in force and effect at the date of the acquisition of property does not determine the right to inherit it upon the death of the owner, but that the law in force at the

date of the death of the owner of the property determines who shall inherit it upon his death (*Brenham* v. *Story*, 39 Cal. 179; *Johnson* v. *San Francisco Sav. Union*, 75 Cal. 134 [7 Am. St. Rep. 129, 16 Pac. 753]; *Sharpe* v. *Loupe*, 120 Cal. 89 [52 Pac. 134, 586]; *Estate of Packer*, 125 Cal. 396 [73 Am. St. Rep. 58, 58 Pac. 59]; *Estate of Porter*, 129 Cal. 86 [79 Am. St. Rep. 78, 61 Pac. 659]; *Estate of Benvenuto*, 183 Cal. 382 [191 Pac. 678]).

█ In view of this well-established rule as applied to said section 1401 of the Civil Code in force and effect at the date of the death of Grattan D. Phillips, deceased, and the facts of this case, there can be no question but that the entire community property upon his death descended to his surviving wife, the respondent herein, to the exclusion of his children or other descendants.

█ Appellant, however, contends that section 1401 as amended in 1923, and no portion thereof, can be given any retroactive effect which would exclude the children from sharing in community property left by their father to the same extent that they would have shares therein under the law in force prior to the amendment of said section in 1923. Appellant bases his claim upon the assumption that that portion of section 1401, as amended in 1923, which purports to give to the wife the right to make testamentary disposition of one-half of the community property upon her death during the lifetime of her husband, is unconstitutional and void if construed to apply to community property acquired prior to the effective date of the amendment to said section 1401 in 1923, and that this provision of said section is so interwoven with the other parts thereof that the section as a whole is either unconstitutional or cannot be given any retroactive effect so as to affect any property acquired prior to the adoption of said amendment. We have held in a recent decision (*McKay* v. *Lauriston** (S. F. 12691), [263 Pac. 1013], filed January 10, 1928) that the provision in said section 1401, as amended in 1923, giving the wife the right to make testamentary disposition of one-half of the community property upon her death during the lifetime of her husband, has no retroactive effect and has

*[REPORTER'S NOTE: A rehearing was granted on February 8, 1928, in the case of *McKay* v. *Lauriston* referred to in the opinion. On rehearing, however, the opinion filed in the case of *McKay* v. *Lauriston* on January 10, 1928, was adopted and approved in all respects as the same was originally rendered, by an opinion rendered In Bank on July 18, 1928, to be reported in volume 204, California Reports.]

no application to community property acquired prior to the effective date of said amendment. In our opinion, however, this provision of the section is not unconstitutional. But whether unconstitutional or merely inapplicable to prior acquired community property, we are unable to agree with appellant that any defect or imperfection to which it may be subject in any way affects the validity or immediate effectiveness of the other provisions of said section which provide for the descent of the husband's one-half of the community property in the event of his failure to make a testamentary disposition thereof.

Under the law as it stood prior to the amendments of 1923, the community property upon the death of the wife belonged to the husband entirely; upon the death of the husband one-half thereof went to the surviving wife, and in the absence of testamentary disposition by the husband the remaining half went to his descendants. As amended in 1923, one-half of the community property upon the death of the wife belongs to the husband and the remaining one-half, in the absence of testamentary disposition by the wife, goes to the husband, also; upon the death of the husband one-half thereof belongs to the wife and the remaining one-half, in the absence of testamentary disposition goes to the wife, also. It was evidently the purpose and intent of the amendment of 1923 to extend the interest of the wife in the community property beyond that possessed by her prior to said amendment. We have seen, however, that that portion of section 1401, as amended in 1923, which purports to give to the wife the right to make testamentary disposition of one-half of the community property during the lifetime of the husband, has no retroactive force or effect and cannot and does not apply to community property acquired by the spouses prior to the enactment of said amendment in 1923. This provision of the section, however, is entirely distinct and severable from that portion of the section which deals with the husband's interest in the community property. The amendment in 1923, in so far as it deals with his interest, simply and solely provides that upon his death the remaining one-half of the community property, after the wife had taken the half thereof to which she was entitled both before and after said amendment, should, in the absence of a will by the husband which he was authorized to make by the law as it stood both before and after said amendment, go to the surviving wife instead of to his descendants as provided by

section 1402 prior to its amendment in 1923. Let us assume that the attempt of the legislature to give to the wife the right to make testamentary disposition of one-half of the community property had failed entirely. Is that any reason to hold or believe that the legislature, had it known of such invalidity, would not have enacted that provision or the amended section by which the wife would become the owner of the whole of the community property upon the husband dying intestate? Surely not. The fact that the legislative intent in the enactment of each of the two provisions was to enlarge the interest of the wife in the community property is a strong, if not a conclusive, indication that it would have enacted the provision giving to the wife the entire community property upon the husband dying intestate, even had it known that the provision giving to the wife upon her death during the lifetime of her husband the right to make testamentary disposition of one-half of the community property was invalid. In fact, the invalidity of that portion of this amended section (assuming for the sake of argument that any portion is invalid) which sought to give the wife testamentary disposition over one-half of the community property instead of furnishing a reason why the legislature would not have enacted the other portion of said section giving to the wife all the community property upon the death of her husband intestate would, in our opinion, have had a favorable rather than an adverse effect upon such contemplated legislation. The intent of the legislature having been to extend the interest of the wife over the community property by the adoption of an amendment to the existing law whereby two new rights were sought to be conferred upon her, the invalidity of such enactment providing for one of said rights, if known to the legislature, would have served as an additional incentive and reason why the other should be enacted into law for the wife's benefit and protection. While it is true that these two enactments are set forth in the same section of the code and are interwoven with each other in the phraseology thereof, yet the purpose of each is plain and clear, and the one is as distinct and severable from the other as if they had been set forth in two separate sections of the code. To hold otherwise would be to give effect to form rather than substance and would be to construe the section according to its letter rather than its just and plain intent and purpose. ■ ''A law which is unconstitutional in part only is not to be held wholly void, unless

the invalid portion is so important to the general plan and operation of the law in its entirety as to reasonably lead to the conclusion that the law would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional. If the law is separable, so that the general object can be attained without aid from the part that is void, the other parts of the law will be upheld. (*Ex parte Frazer*, 54 Cal. 94; *People* v. *Perry*, 79 Cal. 105 [21 Pac. 423]; *People* v. *McFadden*, 81 Cal. 496 [15 Am. St. Rep. 66, 22 Pac. 851].) 'If an independent provision, not in its nature and connections essential to the law, be unconstitutional, it may be treated as a nullity, leaving the rest of the enactment to stand as valid.' (*McGowan* v. *McDonald*, 111 Cal. 65 [52 Am. St. Rep. 149, 43 Pac. 418].) Such invalid provisions 'will not vitiate the whole act, unless they enter so entirely into the scope and design of the law that it would be impossible to maintain it without such obnoxious provisions.' (*People* v. *Hill*, 7 Cal. 103; *People* v. *Burbank*, 12 Cal. 393; *Mills* v. *Sargent*, 36 Cal. 382.)'' (*Ex parte Gerino*, 143 Cal. 412, 420 [66 L. R. A. 249, 77 Pac. 166, 169].)

We do not wish to be understood by anything that we have said in this opinion as questioning the constitutionality of that portion of said section 1401, as amended in 1923, which gives to the wife the right to dispose of by will one-half the community property. As already stated, in our opinion that portion of said section has not, nor was it intended to have, any retroactive force or effect. As applying to community property acquired after the adoption of said amendment it is, in our opinion, a valid and binding legislative enactment. But the mere fact that it does not apply to community property acquired prior to its enactment is no legal or valid ground for holding that the remaining provision of the section, dealing with the descent of the husband's half of the community property, is inapplicable to all community property of which a husband may die seised after the effective date of said amendment, irrespective of whether the property in question was acquired before or after said date.

 A further attack upon the constitutionality of said section 1401, as amended in 1922, is made by appellant based upon the claim that the title to the act amending sec-

tions 1401 and 1402 of the Civil Code in 1923 is defective and does not meet the requirements of the constitution providing that "Every act shall embrace but one subject, which subject shall be expressed in its title." (Art. IV, sec. 24 of the state constitution.) The title of the act reads as follows: "An act to amend sections one thousand four hundred one and one thousand four hundred two of the Civil Code, relating to the distribution of community property on death of husband or wife." Appellant concedes that if the title had read, "An act to amend sections one thousand four hundred one and one thousand four hundred two of the Civil Code," it would have been a sufficient compliance with the requirements of the constitution, but that by the inclusion of the additional words found therein the title was made obnoxious to the mandate of the constitution. Appellant's particular criticism of the title of the act is directed to the use of the words "relating to the distribution" therein, the claim being made that the subject of the act embraces much more than the mere distribution of community property in that it empowers the wife to dispose by will of her half of the community property and makes a radical change in the succession to community property left by the husband dying intestate. The original sections of the code which the act sought to amend, among other things, provided for the descent of the community property of the husband upon his death without leaving a will. The title of the act refers to and identifies these two sections of the code and discloses that the purpose of the act is to amend these sections. This in itself would be sufficient to inform anyone reading the title that it was proposed in the body of the act to change or amend one or all of the provisions of these sections. The fact that the words "relating to the distribution of community property on death of husband or wife" were also contained in the title, and might also be read, would not deceive anyone into the belief that it might not be the intent of the amendment to change the order of descent of the community property of a husband dying intestate. In fact, it appears to us that upon reading said title one of the first things that would suggest itself to the reader would be the possibility that a change in the order of descent of community property of the husband might be contemplated by the passage of the act. The title, therefore, in our opinion, was sufficient, as it disclosed the

general nature or character of the legislation proposed to be enacted (*Abeel* v. *Clark*, 84 Cal. 226, 229 [24 Pac. 383]). Speaking of what was necessary to be expressed in the title of an act in order to comply with the constitutional requirements, this court in a recent decision said: " 'All that is required to be contained therein in order to meet the constitutional requirements is a reasonably intelligent reference to the subject to which the legislation is to be addressed' " (*O. T. Johnson Corp.* v. *City of Los Angeles*, 198 Cal. 308, 323 [245 Pac. 164, 171]). Appellant's counsel, in his closing brief, refers to the fact that the amendments to sections 1401 and 1402, enacted in 1923, were similar to if not identical with those adopted by the legislature of 1919 and later defeated by a vote of the people upon a submission to them under the terms of a referendum election. He further characterizes these amendments as "a mess of legislation" designed to deprive children of their just inheritance, "and a scheme of distribution and procedure is provided that we need not further criticise." He closes his appeal to this court expressing confidence and "hope that sections 1401 and 1402 will menace the people of this state no longer." In answer to these aspersions of counsel against the amendments to the community property law enacted in 1923, we have only to call attention to the fact that these sections of the code have been given approval by the law-making power of this state, whose exclusive jurisdiction it is to determine the policy of laws which are to govern the people of the state subject only to those limitations contained in our constitution. In so far as appellant's rights are involved, we are of the opinion that all constitutional requirements have been met in the enactment of these sections of the Civil Code, and that they were not "foisted upon us by an invalid title."

The order appealed from is affirmed.

Richards, J., Shenk, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.

Preston, J., concurred in the judgment.

Rehearing denied.

All the Justices concurred.