JOHN W. PRESTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21922.   Promulgated December 22, 1930.

*John W. Preston, Esq.*, pro se.
*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

PHILLIPS: The principal issue before us is whether petitioner and his wife had the right to divide income derived solely from the earnings of petitioner during the years 1923 and 1924, and to make separate returns of one-half thereof. Under the laws of California, of which State petitioner and his wife were residents during the taxable years, the marital community exists and the personal earnings of the husband constitute community property. Civil Code of California, sec. 164.

The Revenue Act of 1926 provides as follows:

SEC. 1212. Income for any period before January 1, 1925, of a marital community in the income of which the wife has a vested interest as distinguished from an expectancy, shall be held to be correctly returned if returned by the spouse to whom the income belonged under the State law applicable to such marital community for such period. * * *

In 1923 and 1924 petitioner and his wife made separate returns in which each returned one-half of the net income derived from the personal earnings of the petitioner. The issue before us, therefore, is resolved into whether during the years 1923 and 1924 petitioner's wife had a vested interest in the income of the marital community.

In *United States* v. *Robbins*, 269 U. S. 315, the Supreme Court had before it the question whether husband and wife, domiciled in California, might each return one-half of the income received in 1918 from community property acquired prior to 1917 and one-half of the earnings of the husband. The court, speaking through Mr. Justice Holmes, said:

We can see no sufficient reason to doubt that the settled opinion of the Supreme Court of California, at least with reference to the time before the later statutes, is that the wife had a mere expectancy while living with her husband. * * * *Roberts* v. *Wehmeyer*, 191 Cal. 601, 611, 614, 218 p. 22.

See also *Poe* v. *Seaborn*, 282 U. S. 101.

We, therefore, start with the premise that unless there was some change in the law prior to the receipt of the income here involved, the wife had an expectancy and not a " vested interest."

Under the laws of California in effect prior to 1917 the wife, upon the death of the husband, took one-half of the community property by succession—see *Estate of Moffett*, 153 Cal. 359. In 1917

the legislature adopted an act revising the inheritance-tax laws. This act, as amended, provided in section 1, subdivision (2) :

*"Estate" and "Property." Wife's Share of Community Property Exempted.*—The words "estate" and "property" as used in this act shall be taken to mean the real and personal property or interest therein of the testator, intestate, grantor, bargainor, vendor, or donor passing or transferred to the individual legatees, devisees, heirs, next of kin, grantees, donees, vendees or successors and shall include all personal property within or without the state; provided, that for the purpose of this act the one-half of the community property which goes to the surviving wife on the death of the husband, under the provisions of section one thousand four hundred two of the Civil Code, shall not be deemed to pass to her as heir to her husband, but shall, for the purpose of this act, be deemed to go, pass, or be transferred to her for valuable and adequate consideration and her said one-half of the community shall not be subject to the provisions of this act; provided, further, that in case of a transfer of community property from the husband to the wife, within the meanings of subdivisions (3) or (5) of section two of this act, one-half of the community property so transferred shall not be subject to the provisions of this act.

At that time section 1402 of the Civil Code provided as follows:

*Distribution of Common Property on Death of Husband.*—Upon the death of the husband, one half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition, goes to his descendants, equally, if such descendants are in the same degree of kindred to the decedent; otherwise, according to the right of representation; and in the absence of both such disposition and such descendants, is subject to distribution in the same manner as the separate property of the husband. In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance and the charges and expenses of administration.

In 1917 section 172 of the Civil Code was also amended and section 172 (a) was added. Prior to the amendment of 1917, section 172 provided as follows:

*Management, Control, and Disposition of Community Property.*—The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto; and provided also, that no sale, conveyance or encumbrance of the furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property, shall be made without the written consent of the wife.

As amended in 1917, section 172 provided:

*Management of Community Personal Property.*—The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, or sell, convey

or encumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife.

And subdivision (a) of section 172, which was added, provided as follows:

*Management of Community Real Property.*—The husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, (that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided also, however), that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.

Petitioner urges that the legislative action of 1917 modified the law of community property, (1) by providing that in a suit for separate maintenance where no divorce is granted and the marriage status continued, the court may make the same disposition of the community property that it could if the marriage were dissolved; (2) by extending the definition of community property to include real property in this State and personal property, wherever situated, which would not have been the separate property of either if acquired while domiciled in this State; (3) by providing that the husband can not sell, encumber or lease the community realty for a period of over one year without the joinder of the wife; (4) by providing that no inheritance tax shall be assessed on the wife's one-half of the community property.

The same arguments were urged before the Supreme Court of California in the case of *Stewart* v. *Stewart*, 199 Cal. 318; 249 Pac. 197, and were there disposed of adversely to the claims of petitioner in this proceeding. In that case the wife sought to quiet title to certain community property acquired in 1918 and to assert a present vested interest in one-half of the community property. The Supreme Court of California held that the amendments of 1917 did not give the wife a present vested interest in community property. In the opinion Justice Richards said:

The Legislature in framing these two amendments which, taken together, worked a revision of the former section 172 of the Civil Code did not state therein "in plain language", as it was pointed out in the second Spreckels Case it might easily have done, "that the purpose of these amendments was to vest in the wife during the marriage a present interest or estate in the community property." The Legislature did not even by said amendments to the Civil Code go as far as it had done in its revision of the inheritance tax law, coincidentally adopted, so as to state that:

The "one-half of the community property which goes to the surviving wife on the death of the husband * * * shall not be deemed to pass to her as heir of her husband but shall * * * be deemed to go, pass, or be transferred to her for valuable and adequate consideration."

Had the Legislature seen fit to so declare in the language employed by it in the coincident statute, no doubt could have existed as to its intent to work such a radical change in the former and long-established status as to render the interest of the wife in the community property thereafter to be acquired a present vested estate and interest therein from the date of its acquisition. The Legislature did not do this nor anything like it. All that the Legislature by these amendments did do, or attempt to do, was to cast about the interest of the wife in both the real and personal property of the community during the continued existence of the marriage relation added safeguards and protection against the fraudulent or inconsiderate acts of the husband in the exercise of his control and dominion over these properties of the nature of those already provided for in earlier statutes and especially in and by the 1891 amendment to section 172 of the Civil Code.

It follows, to our minds, irresistibly that the same reasoning which was applied to the earlier amendment of section 172 of the Civil Code equally applies to those changes in and revision thereof accomplished by the Legislature in 1917. Additional force is, if needed, given to this conclusion when the particular provisions of section 172a as added to the Code in that year are subjected to careful consideration; for it is made to therein appear that the sole lease, contract, mortgage, or deed of the husband holding the record title to community real property to a lessee, purchaser, or incumbrancer in good faith, without knowledge of the marriage relation, shall be presumed to be valid and shall be so valid unless an action to avoid such instrument shall be commenced within one year from the recordation thereof. This provision renders the conveyance of the whole of the community real estate to a purchaser or incumbrancer thereof in good faith voidable but not void; a condition entirely inconsistent with the existence of a present and vested ownership in the wife of an undivided one-half of such property, and also with an intent on the part of the Legislature by said amendments to effectuate such a radical change in a long-established rule of property. We are, therefore, clearly of the opinion that the amendments to the Civil Code, adopted in 1917, did not operate to change such rule to the extent of creating in the wife a present vested interest in the property of the community during the continuance of the marriage relation.

This opinion was reiterated and approved in the second case of *Stewart* v. *Stewart*, 269 Pac. 439, and in *McKay* v. *Lauriston*, decided the same day.

The Legislature of 1919 added sections 172 (b), (c), and (d) and the Legislature of 1921 amended section 370 of the Code of Civil Procedure. Sections 172 (b), (c), and (d) provide that when either spouse has been adjudged insane or incompetent the other spouse may petition the court for and be decreed authority to sell, convey, mortgage or lease community property; and the amendment to section 370 of the Code of Civil Procedure, among other things, authorizes the wife to sue alone for the recovery of her earnings. We do not think that these changes had the effect of changing the established rule of community property and giving to the wife a

present vested interest therein. Legislative safeguards of the wife's earnings are not new in California jurisprudence. The earnings of the wife are community property, but such earnings are not liable for the debts of the husband (Civil Code, sec. 168, enacted 1872), while community property generally is liable for the husband's debts.

It seems clear, therefore, that at least before the amendments of 1923 the wife did not have a vested interest in community property in California, *Mary Brent, Executrix*, 6 B. T. A. 143. See also *Estate of Phillips*, 263 Pac. 1017; *McKay* v. *Lauriston*, 263 Pac. 1013; *Talcott* v. *United States*, 23 Fed. (2d) 897. It remains to be determined whether the amendments of 1923 gave her that interest.

In 1923 the Legislature of California passed an act amending sections 1401 and 1402 of the Civil Code and section 1 of the Inheritance Tax Law. Prior to this amendment section 1401 provided as follows:

*Distribution of the Common Property on Death of Wife.* Upon the death of the wife, the entire community property, without administration, belongs to the surviving husband, except such portion thereof as may have been set apart to her by judicial decree, for her support and maintenance, which portion is subject to her testamentary disposition, and in the absence of such disposition, goes to her descendants, or heirs, exclusive of her husband.

After the amendment of 1923 section 1401 provided as follows:

*Community Property on Death of Spouse.* Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of section one thousand four hundred two of this code.

After the amendment of 1923 section 1402 of the Civil Code provided as follows:

*Community Property Subject to Administration. Husband's Control after Death of Wife.* Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to administration, his debts, family allowance and the charges and expenses of administration; but in the event of such testamentary disposition by the wife, the husband, pending administration, shall retain the same power to sell, manage and deal with the community personal property as he had in her lifetime; and his possession and control of the community property shall not be transferred to the personal representative of the wife except to the extent necessary to carry her will into effect. After forty days from the death of the wife, the surviving husband shall have full power to sell, lease, mortgage, or otherwise deal with and dispose of the community real property, unless a notice is recorded in the county in which the property is situated to the effect that an interest in the property, specifying it, is claimed by another under the wife's will.

The Inheritance Tax Act of 1923, sections (1), (2), (6), provided as follows:

(1) This act shall be known as the "inheritance tax act."

(2) The words "estate" and "property" as used in this act shall be taken to mean the real and personal property or interest therein of the testator, intestate, grantor, bargainor, vendor or donor passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees, vendees, or successors, and shall include all personal property within or without the state or subject to the jurisdiction thereof; provided, that for the purpose of this act upon the death of the husband one-half of the community property is taxable under the provisions of this act; provided, further the one-half of the community property which belongs to the surviving spouse, under the provisions of section one thousand four hundred one of the Civil Code, and, in the case of the death of the wife, the community interest which goes to her husband under the provisions of section one thousand four hundred and two of the Civil Code in the absence of her testamentary disposition thereof to another or others, shall not be deemed to pass to such surviving spouse as heir, but shall for the purpose of this act, be deemed to go, pass or be transferred for a valuable consideration, and the said one-half of the community property and' the interest last mentioned going as aforesaid to the surviving husband shall not be subject to the provisions of this act; provided further, that in case of a transfer of the community property from one spouse to the other within the meaning of subdivision three (3) or five (5) of section two of this act, one-half of the community property so transferred shall not be subject to the provisions of this act; * * *

(6) This act shall become effective and in force contemporaneously with the taking effect of amendments to sections one thousand four hundred one and one thousand four hundred two of the Civil Code, which amendments were enacted at the forty-fifth session of the Legislature of the State of California and known as chapter eighteen of the statutes of 1923, and not otherwise.

The 1923 changes in the code did not disturb the right of the wife to take over half of the community property on the death of the husband, a right which she has enjoyed since the original enactment in 1850. However, it substituted the wife as the party entitled to succeed to the other half, subject to the testamentary disposition of the husband, instead of his descendants or next of kin. In this respect it is a statute of descent and succession or rule of inheritance, *Phillips* v. *Phillips*, 263 Pac. 1017.

Such a rule is effective on the death of the husband and does not purport to change or affect the interest of the wife in the community during the lifetime of her husband. Obviously, section 1401, as amended in 1923 extending the power of testamentary disposition to the wife of one-half of what community property remained at her death, subject to administration and her husband's debts, is not a declaration of the substantive community property doctrine contained in Title I of the code, but merely a change in the privilege of testamentary disposition and the law of descent. By enlarging the wife's privilege of testamentary disposition over property or modify-

ing in any respect the laws of descent with reference to property, the legislature did not change the interest in the community property during coverture. Interests in property are not ordinarily created in that manner, and we do not think the legislature intended to work such a radical change in a long established rule of property. As was pointed out in *Stewart* v. *Stewart, supra*, the legislature did not state therein in plain language, as it might easily have done, " that the purpose of these amendments was to vest in the wife during the marriage a present interest or estate in the community property."

Petitioner urges that the language of the statute—that at the death of the husband or wife one-half of the common property " belongs " to the surviving spouse and the other half in the absence of testamentary disposition by the descent " goes " to the surviving spouse, indicates an intention of the legislature to give the wife a present vested interest in the community property. Considering this a statute of descent and succession, the language used is not inconsistent with an intention on the part of the legislature to provide for a distribution of the property on the death of one of the spouses.

The construction urged by the petitioner is further weakened when we consider the amendment of 1923 to the Inheritance Tax Act which went into effect at the same time as sections 1401 and 1402 of the code as amended in 1923, where it is provided that upon the death of the husband one-half of the community property is taxable under the provisions of the act, but on the death of the wife the one-half of the community property which " belongs " to the surviving spouse and " the community interest which goes to her husband " in the absence of her testamentary disposition thereof, *shall not be deemed to pass to such surviving spouse as heir*, but for a valuable consideration, and neither the half which is said to " belong " to him nor the interest which " goes " to him are taxable under this act. This taxing statute strongly indicates that the legislature regarded the respective interests of the husband and wife in the community property as unchanged by sections 1401 and 1402 of the Civil Code as amended in 1923.

The holding of the courts of California, that the wife has a mere expectancy in community property and that the ownership is in the husband, has been based largely on the husband's power of control and disposition of the common property during marriage, and the fact that the common property is subject to the husband's debts and not to the wife's. See *Van Martin* v. *Johnson*, 15 Cal. 308; *Packard* v. *Arellanes*, 17 Cal. 529; *De Godfrey* v. *De Godfrey*, 39 Cal. 157; *In re Burdick*, 112 Cal. 387; *Spreckles* v. *Spreckles*, 116 Cal. 339; 158 Pac. 537; *United States* v *Robbins*, 269 U. S. 315.

The amendments to the Civil Code of 1917 did not divest the husband of the power of control and disposition of community property. It merely threw around the interests of the wife additional safeguards. *Stewart* v. *Stewart, supra.* Section 172 as amended in 1917 gave to the husband exactly the same absolute power of control and disposition of community personal property that he had before such amendment, and section 172 (a) which was added in 1917 did not have the effect of giving the wife a present vested interest in the community real property. The dominion and control of the husband over community property during marriage was not changed by the amendments of 1923 and it was still subject to the debts of the husband, but not of the wife, no change being made in the law in that respect.

In 1927 the Legislature of California enacted section 161 (a) of the Civil Code defining the interests of husband and wife in community property during the marriage relation. This section provided as follows:

*Interests in Community Property.* The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property.

At the time this section was enacted there had been no pronouncement by the courts as to the effect of the amendments of 1923. Had those enactments been sufficient to give to the wife a present vested interest in community property, the enactment of 1927 would have been only an idle gesture.

This case has been discussed at some length because it does not appear that there is any published decision which passes upon the effect of the 1923 amendments in the light of section 1212 of the Revenue Act of 1926. The decision in *Griffith Henshaw, Executor,* 12 B. T. A. 1441, aff'd., 31 Fed. (2d) 945; 280 U. S. 43 A, raised a somewhat similar question under the estate tax law. There the decedent died on March 2, 1924. The Circuit Court held that " in neither material fact nor statutory provision is there any distinction " between the case then presented to it and that passed upon in *Talcott* v. *United States,* 23 Fed. (2d) 897. In the latter case it was held that in the case of a husband who died in 1919, the wife had no vested interest. The decision in the *Henshaw* case reaches the same conclusion as to one who died in 1924.

We must conclude that during the years 1923 and 1924 petitioner's wife did not have a vested interest in the community personal property constituted by the earnings of her husband.

Petitioner also asserts that in computing the amount of the deficiency due from him on the community income, credit should have been allowed for the amount of tax already paid upon the wife's return. Ordinarily the proper method of treating such a situation would be to refund the overpaid tax to the wife, who made her return as a taxpayer. In this case, however, it appears that all income returned by the wife was community income. The wife had no separate income and the tax paid on the wife's return was paid on the community income. The Commissioner is now asserting that all such income is taxable to the husband, the manager of the community. It would therefore seem proper that the husband should be allowed credit for the total amount of tax paid on the community income returned by both spouses, to the extent that such payment has not been refunded or otherwise credited.

Reviewed by the Board.

*Decision will be entered under Rule 50.*